1879

ANCHOR POINT, INC., Appellant v. The SHOALS OF ANDERSON, INC., a/k/a Shoals Sewer Company, The Shoals Recreation Association and D. Fred Allen, Respondents.

(424 S.E. (2d) 521)

Court of Appeals

*J. Calhoun Pruitt, Jr.*, Anderson, *for appellant.*

*Joseph G. Wright, III*, Anderson, *for respondent.*

Heard Sept. 9, 1992.

Decided Oct. 26, 1992.

*Per Curiam:*

Appellant, Anchor Point, Inc. instituted this action against respondents seeking a temporary restraining order and permanent injunction to prohibit the respondents from terminating sewer services to appellant, a permanent injunction requiring the respondents to operate certain recreational amenities, and an order requiring respondents to repay a certain sum paid under protest pending an appeal of a related matter. The respondents answered and counterclaimed for past amounts due for sewer and recreational fees. On September 17, 1990 the master-in-equity issued a permanent injunction prohibiting termination of sewer services conditioned upon Anchor Point's timely payment of bills authorized by a Public Service Commission order. He ordered payment of $1,298 for July and August 1990 and $2,592 held in escrow for respondents, denied Anchor Point's request for a permanent injunction conditioning reconsideration upon Anchor Point's pro rata payment of certain expenses and granted judgment for respondent for $23,917 on its counterclaim. Anchor Point appeals. We affirm.

The litigation and substantive background for this suit is involved and complex. The record reveals the following. In the early to mid-seventies, appellant Fred Allen began developing property known as The Shoals of Anderson. Phase I, consisting of 36 condominiums, was originally called Shoals I but later became Anchor Point. Allen experienced some problems causing him to lose the property for about a five-year period but he reacquired it. During this period, Anchor Point operated the sewer and recreational amenities through Gary Kinert, a resident of Anchor Point and president of Anchor Point's homeowner's association. Kinert testified that during this period Anchor Point residents paid 100% of the cost of the recreational amenities, the cost to operate everything was about $17 or $18 per month per unit which included the sewer plant, tennis courts and clubhouse, and, of the total amount, approximately $8 went toward the operation of the sewer plant. Allen reacquired the property in May 1983 and began

developing Phase II which consisted of both single family residences and duplexes.

Around November 1984, Allen took over the management of the sewer and recreational facilities. Kinert testified that, at that time, the sewer plant was in good condition. Allen disputed this assertion, stating he had agreed to let Anchor Point run the sewer facilities as long as they maintained the system in a proper manner, but when he couldn't get various items corrected pursuant to demand by the Department of Health and Environmental Control, he took the operations over, as the permit was in his name and he was being held responsible for it. The residents of Anchor Point disputed the manner in which sewer and recreational fees were assessed against them and refused to pay the fees. In 1985, The Shoals Recreational Association, with a 75% voting interest by Phase II property owners and 25% by Anchor Point property owners, commenced legal action against the owners of three units in Anchor Point for nonpayment of fees. As a result of that action, Judge Patterson held that the owners of the condominiums in Anchor Point were responsible for 25% of the sewer and recreational fees and the property owners of Phase II were responsible for the remaining 75%°. Thereafter, Allen called a meeting of the recreation association but Anchor Point refused to pay any of the fees contending that Allen failed to present a budget in conformity with Judge Patterson's order. Allen collected only $203 through his judgment against the owners of the three condominiums. Allen continued to operate the sewer system through loans from himself and his company. However, The Shoals Recreational Association was dissolved by vote of the members on November 1, 1986 due to a lack of funds.

Subsequently, The Shoals Sewer Company applied to the South Carolina Public Service Commission for the establishment of rates for sewer fees and services, and Anchor Point, Inc. intervened. The Commission issued an order on October 4, 1989 granting a Certificate of Public Convenience and Necessity to The Shoals Sewer Company and setting certain rates which allowed a charge of $648 per month to Anchor Point, Inc. A petition for rehearing filed by Anchor Point, Inc. was denied and these orders were appealed to the circuit court. Prior to a hearing by the circuit court, Anchor Point,

Inc. moved for a stay and temporary injunction to enjoin The Shoals Sewer Company from terminating sewer service to Anchor Point. By order dated December 20, 1989, Judge Cottingham held that the sewer company was not entitled to terminate sewer service so long as Anchor Point, Inc. timely paid the past-due amount. He further ordered Anchor Point, Inc. to pay the appropriate amount due under protest during the pendency of the appeal. Subsequently, the circuit court, through an order dated March 20, 1990, reversed the Public Service Commission. In an opinion filed on May 26, 1992 and after issuance of the order at hand, the Supreme Court reversed the circuit court and upheld the PSC order. *See Anchor Point, Inc. and Gary C. Kinert v. The Shoals Sewer Company and the Public Service Commission of South Carolina*, 418 S.E. (2d) 546 (S.C. Sup. Ct. 1992).

Appellant first contends the master erred in finding the homeowner's association liable by virtue of a fiduciary relationship and argues judgment against the homeowner's association was in error because liability for the sewer and recreational fees is with the individual unit co-owners and not the association. Appellant points to a portion of the respondents' counterclaim which refers to the "residents of Anchor Point" as being liable and argues that there is no allegation in the pleadings that the homeowner's association as a fiduciary is legally liable for the debts of the individual unit owners. We find this argument to be without merit. First, while the counterclaim did, indeed, refer to the "residents of Anchor Point" in paragraph 12, paragraphs 14 and 17 specifically refer to "the Plaintiff" which is Anchor Point, Inc. In its reply, appellant admitted paragraph 14 of the counterclaim and as to paragraph 17 "admitted that the Plaintiff has failed to pay the payments thereafter. . . ." At no point in the reply does the appellant raise the issue that, as a homeowner's association, the appellant is not liable for the debts of its members.

Further, the master found, and the record supports, that the owners of condominiums of Anchor Point authorized Anchor Point, Inc. to act on their behalf, that Anchor Point, Inc. initiated legal action and represented the interests of the co-owners in legal actions, and that Anchor Point, Inc. paid the monthly sewer charges from October 1989 to June 1990 as evidenced by certain checks introduced into evidence. Most im-

portantly, the master found Anchor Point, Inc. collected the sewer fees in the monthly dues assessed by Anchor Point, Inc. Although appellant disputes this finding, two of the owners of condominiums in Anchor Point testified they paid fees to Anchor Point and one of these owners stated these fees were included in the maintenance fee collected by Anchor Point. This testimony is further corroborated by financial records of Anchor Point, Inc. showing assessments against the individual condominium owners ranging from $61 to $87 a month from 1988 to 1990.

Appellant next contends the master erred in placing restrictions on any future attempts by Anchor Point, Inc. to obtain a subsequent injunction requiring respondents to operate the recreational amenities. We disagree. The master held as follows:

> The motion of Anchor Point, Inc. for a permanent injunction requiring the [respondents] to operate the recreational amenities is denied and shall not be reconsidered until such time as Anchor Point, Inc. has paid its pro rata portion of the fixed costs of the recreational facilities which were not open after December 1986 and agree to pay its pro rata portion of the costs for upgrading the amenities to a satisfactory condition for use and agree to pay its pro rata portion for the costs to operate the facilities.

The evidence indicates the recreational facilities have fallen into a state of disrepair and are in need of much work before they can be put into use. It further shows the reason for the poor condition and closing of the facilities is the failure of the residents to pay the fees necessary for operation and maintenance. Further, the history of litigation before us indicates several suits have been brought by various parties involving different courts and at least one state administrative agency in an attempt to resolve disputes involving the same issues between the developer of this property and the condominium owners of Anchor Point. In placing a restriction on reconsideration of the injunction before him, it is clear the master was attempting to avoid further repetitive action by the parties and promote judicial economy. We applaud this effort. The appellant does not appear to dispute the reasonableness of these

conditions and, based upon the record before us, we find the evidence supports the conditions. Further, while the appellant again attacks the respondents' pleadings arguing this relief was not specifically prayed for, we note the counterclaim, prayed "[f]or such other and further relief as the Court may deem just and proper." Given the issues raised in the matter at hand, we find the prayer for relief encompassed that which was granted by the master.

Finally, appellant asserts the master erred in admitting into evidence a letter from the Department of Health and Environmental Control concerning the condition of the sewer plant just prior to Allen taking over the operation, arguing such was hearsay. We disagree.

The admission of evidence is a matter addressed to the sound discretion of the trial judge and his ruling will not be disturbed absent a clear abuse of discretion amounting to error of law. *Hofer v. St. Clair*, 298 S.E. 503, 381 S.E. (2d) 736 (1989). The letter in question was not offered for proof of the matter asserted, but only to show the basis for Allens' action of taking over operation of the sewer plant. Appellant clearly took issue with the reasonableness of the operation of the plant by Allen, as evidenced by the testimony of Kinert who had run the plant during Allen's absence. Further, we find no prejudice in the admission of the letter as it was merely cumulative to the testimony of Allen regarding the reason he undertook operation of the plant. *See Cartee v. Cartee*, 295 S.C. 103, 366 S.E. (2d) 269 (Ct. App. 1988) (appellant bears the burden of showing both error and prejudice).

For the foregoing reasons, the order below is affirmed.

Affirmed.