## A95A2148. NORMAN v. WILLIAMS et al.
### (469 SE2d 366)

SMITH, Judge.

Jimmy Lee Norman, an employee of the Georgia Department of Transportation (DOT) was struck and killed by a truck driven by David R. Williams. His surviving spouse and legal representative, Beverly Norman, filed a wrongful death action against Williams and his employer, Pepsi Bottlers. The case was tried before a jury, which returned a verdict in favor of the defendants. Mrs. Norman appeals from the judgment entered by the trial court on the verdict.

On appeal, several of Mrs. Norman's contentions concern the trial court's charge to the jury. She contends the trial court erroneously charged the jury on the doctrines of assumption of risk, comparative negligence, and avoidance of consequences of another's negligence. She also complains about the trial court's failure to give certain charges requested by her, about evidentiary rulings made by the court regarding witness opinion evidence, and about the restrictions on closing argument made by the trial court. We find no reversible error and therefore affirm.

On June 11, 1990, Jimmy Norman's vehicle experienced a mechanical failure and was rolled onto the shoulder of the road just past the foot of the Moreland Avenue exit ramp on Interstate 20. While he and another DOT employee waited for the vehicle to be repaired, Mr. Norman crossed the exit ramp to relieve himself. As he returned across the ramp, he was struck by the vehicle driven by Williams, which was exiting the interstate onto the ramp. Williams was the only eyewitness to the collision. The officer who investigated the accident testified that in his opinion, Mr. Norman re-entered the roadway from a culvert or ditch.

1. Relying in large part on *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822 (409 SE2d 524) (1991), Mrs. Norman contends the trial court erroneously charged the law on assumption of risk. She contends that her husband must have had knowledge of very narrow circumstances to have assumed the risk of his own injury. She argues that evidence was presented that Williams exited from the interstate suddenly and rapidly, and no evidence was presented that Mr. Norman knew that Williams would precipitously veer onto the ramp without using the deceleration lane. In support of her contention that Mr. Norman had no knowledge of Williams's future negligent behav-

ior, she points out that Williams admitted he saw Mr. Norman stop in his attempt to cross the ramp and turn toward him in apparent surprise before he was struck.

We disagree. First, as to the contention that a deceleration lane was available for Williams's use and that Williams misused it, the existence of such a lane was hotly contested at trial. Two witnesses, including a DOT investigator, testified that no such lane existed. Further, and more fundamentally, Mrs. Norman's reliance on *Beringause* is misplaced. The language on which she relies is dicta,[1] and this case is distinguishable from *Beringause* on its facts. In *Beringause*, a driver in a potentially dangerous convoy was struck by a swerving truck as he was lawfully traveling in his own lane using flashing emergency lights and expecting other drivers to use care to avoid hitting his vehicle. In this case, Mr. Norman, a 12-year DOT employee "fully aware of the potential hazards existing on a high speed controlled access highway," nevertheless attempted to cross a vehicular area on foot from a position of partial concealment and *then* turned to look for oncoming traffic. *Beringause* simply is not apt.

Reversal of this case based on dicta in *Beringause* would be tantamount to adoption *as a matter of law* of a rule that a pedestrian darting[2] into a busy street, even with knowledge of the presence of vehicles, could *never* be found to have assumed the risk of injury. We will not apply *Beringause* in such a broad manner. We are not determining as a matter of law (as in a motion for summary judgment or directed verdict) whether Norman assumed the risk of his injury. Our duty, instead, is simply to determine whether some evidence was presented that provided the basis for an assumption of risk charge.

As noted above, there was some evidence that Mr. Norman was an experienced DOT employee, who had knowledge of highway hazards. Indeed, the evidence showed that caution cones and flashing lights marked the area around the disabled truck and a repair truck near it. Mr. Norman left this established safe area, crossed an interstate highway exit ramp near the bottom of the ramp, and attempted

---

[1] The language on which Mrs. Norman relies is a direct quotation from Prosser & Keeton, The Law of Torts, § 68, p. 485 (5th ed. 1984): "It is not true that in any case where the plaintiff voluntarily encounters a known danger he necessarily consents to any future negligence of the defendant. A pedestrian who walks across the street in the middle of a block, through a stream of traffic travelling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. *This is contributory negligence pure and simple; it is not assumption of risk.* The plaintiff has exposed himself to the risk of future harm, but he has not consented to relieve the defendant of any future duty to act with reasonable care." (Punctuation omitted; emphasis in original.) 200 Ga. App. at 823.

[2] While Mrs. Norman contends this is not a "dart out" case, Williams testified that as he was exiting onto the ramp, he "saw Mr. Norman running in the grassy area, coming across the ramp."

to re-cross the ramp from a place of concealment, a culvert or ditch, without stopping to determine whether he could proceed safely. The jury could have found from the evidence that he deliberately dashed onto the ramp "without any apparent effort to ascertain or verify" the safety of doing so. *First Pacific Mgmt. Corp. v. O'Brien*, 184 Ga. App. 277, 281 (361 SE2d 261) (1987). See generally *Vaughn v. Pleasent*, 219 Ga. App. 8, 9-10 (2) (463 SE2d 548) (1995). Furthermore, a stop sign was posted at the top end of the exit ramp. Mr. Norman was crossing the roadway at a place that was not a crosswalk or other place where traffic was obligated to stop. "It was thus a jury question as to whether [he] had assumed a greater risk from vehicles using the main thoroughfare than would a pedestrian passing over a crosswalk [cits.]" or where a stop sign was located. *Hill v. Copeland*, 148 Ga. App. 232 (1) (250 SE2d 822) (1978). Had the trial court *refused* to charge on assumption of risk, it would have denied appellees "the opportunity to have the jury consider assumption of the risk as a complete defense to . . . liability." *City of Eatonton v. Few*, 189 Ga. App. 687, 691 (5) (377 SE2d 504) (1988). The trial court did not err in granting appellees' request to charge on assumption of risk.

2. Mrs. Norman contends the trial court erroneously failed to charge the jury "that the driver of an automobile has no right to assume that the road is clear, but must keep a diligent lookout ahead for pedestrians and traffic, particularly at places where the conditions are such that there are reasons for anticipating the presence of other vehicles and persons." The facts of this case are distinguishable from those in *Fountain v. Thompson*, 252 Ga. 256 (312 SE2d 788) (1984), relied upon by Mrs. Norman. In *Fountain*, the defendant ran over an individual lying comatose in the highway, and the Supreme Court held that "such a person is owed a duty of care where he is lying in the open on a flat road, even though undiscovered." Id. at 257.

The distinction between an individual lying in the open road and one darting into the roadway was recognized in *Tucker v. Love*, 200 Ga. App. 408 (408 SE2d 182) (1991), where the decedent ran into the street into the path of a bus. Finding no error in the trial court's refusal to charge the jury that the defendant had a duty to discover the victim in the roadway, this court found that the victim was not lying in the highway when the collision occurred, "but rather was in the process of running across the street." Id. at 409. Here, the jury could infer from the evidence that Mr. Norman ran onto the roadway into the path of Williams's vehicle. Moreover, the trial court charged the jury that a driver's duty is to "exercise due care to avoid colliding with any pedestrian upon any roadway." The trial court did not err in refusing to give the requested charge.

3. Mrs. Norman contends the trial court erroneously failed to charge on OCGA § 40-6-20, regarding official traffic control devices.

The record does show that a yellow sign with the legend "exit 30 m.p.h." was located near the area of the fatal impact. Testimony, including that of Mrs. Norman's own expert, revealed, however, that the sign was an "advisory sign." The expert testified, "It's a judgment to use the sign to begin with, and it's a further judgment exactly where you place it." Expert testimony regarding the sign also showed that the "posted" speed limit was higher than that of the advisory sign, that a driver should be at the advisory speed by the time he reached the *end* of the ramp so that he could stop at the stop sign there, and that the speed was to be reached "somewhere" on the ramp. Mrs. Norman's request to charge made no mention of this advisory speed. Because the sign was not mandatory, the trial court did not err in refusing to charge the requested Code section.

We do not agree with Mrs. Norman that *Fabian v. Vincent*, 155 Ga. App. 464 (270 SE2d 858) (1980) demands a contrary result; that case involved an alleged violation of an official traffic control device, a "no parking" sign. Further, *Maxwell v. State*, 97 Ga. App. 334 (4) (103 SE2d 162) (1958), also relied upon by Mrs. Norman, actually supports the conclusion that the trial court did not err in refusing to give the charge. In *Maxwell*, the trial court gave a charge on former Ga. Code Ann. § 68-1638 when the accused was charged with crossing a double yellow line. This Court reversed, holding that a solid yellow line is not a sign defined by law and is not an official traffic control device. Similarly, the "advisory sign" is not provided for or defined by Georgia law, and the trial court did not err in refusing to charge regarding advisory signs.

4. Contending no evidence supported a finding that Mr. Norman was negligent, Mrs. Norman also contends the trial court erroneously charged the law of comparative negligence. As noted in Division 1, a rational trier of fact could have inferred from the evidence that Mr. Norman entered the roadway without warning and without determining whether that action was safe. Only slight evidence need exist from which an inference of comparative negligence may be drawn to authorize such a charge. *Davis v. Hammock*, 123 Ga. App. 33, 36 (3) (179 SE2d 283) (1970). Evidence was presented from which the jury could infer that Mr. Norman assumed the risk of injury to himself or that his negligence was greater than any of Williams. Because his presence on the highway is required, a highway worker engaged in his work does enjoy a "special status," and he is "justified in assuming that the driver of an automobile will exercise some care to avoid striking him." *Myers v. Pearce*, 102 Ga. App. 235, 241 (3) (115 SE2d 842) (1960). But while *Myers* helps define the status of one working on the highway, the holding there has nothing to do with whether a comparative negligence charge is appropriate in a case with evidence that supports a contention of substantial negligence on the part of the

worker. The trial court did not err in giving the requested charge on comparative negligence.

5. Mrs. Norman also contends the trial court erroneously instructed the jury that she could not recover if Mr. Norman failed to use ordinary care in avoiding the consequences of Williams's negligence. Even assuming Williams was somehow negligent, the jury could have inferred from the evidence that Mr. Norman failed to exercise ordinary care to avoid that negligence. The jury, for example, could have inferred that he failed to look in the direction of oncoming traffic until after he had proceeded onto the roadway. We therefore find no merit in this enumeration.

6. Mrs. Norman complains the trial court erroneously sustained Williams's objection to testimony from the medical examiner regarding his findings from the autopsy performed on Mr. Norman. Defense counsel did not object to introduction of the findings, or conclusions, of the medical examiner. Instead, counsel objected to his description of the actual procedure performed on the organs of Mr. Norman's body, because it was irrelevant and was "difficult material for people to deal with for no reason." The court did not rule on the issue, and plaintiff's counsel stated he did not intend to examine the witness about such matters. Counsel then interrogated the medical examiner about his findings and conclusions, including the type of injuries and the cause of death, and he abandoned the area of inquiry about which he now complains. We find no merit in this contention.

7. Mrs. Norman contends the trial court erroneously failed to restrict opinion evidence from a defense witness that Williams "did everything humanly possible to avoid the accident, and had no chance to react in time." She maintains that the comment was an opinion based on hearsay. The witness's conclusion was elicited after the witness, a DOT employee (and again, the friend of Mr. Norman who testified that no deceleration lane existed, see Division 1, supra) testified about his work history with DOT, his extensive training in safety and accident investigation, and his investigation of this collision in the course of his duties as a district safety officer for DOT. His testimony regarding the scope of the investigation included information he learned through talking with witnesses, visiting the scene, and observing the police investigation. His own support staff from DOT assisted him in the investigation.

Although this witness's conclusion may have been based in part on hearsay, that does not render it inadmissible. "Provided an expert witness is properly qualified in the field in which he offers testimony, [cit.] and the facts relied upon are within the bounds of the evidence, whether there is sufficient knowledge upon which to base an opinion or whether it is based upon hearsay goes to the weight and credibility of the testimony, not its admissibility." *Orkin Exterminating Co. v.*

*McIntosh*, 215 Ga. App. 587, 592-593 (4) (452 SE2d 159) (1994). Mrs. Norman complains that the witness was not proven to be an expert, but her objection to the testimony at trial was made on the ground that the conclusion was based on hearsay; Mrs. Norman did not object on the ground that the witness had not been proven to be an expert. We find no error.

8. Mrs. Norman complains that the trial court erroneously restricted the breadth of closing argument "regarding the apparent lack or inadequacy of the training . . . Williams received from . . . Pepsi." Of course, deductions may be drawn from the evidence adduced at trial. Here, however, the record portions relied upon to support the contention that the issue was raised by the evidence do not appear to address training Williams received from Pepsi Cola. Williams agreed he had "special training in driving a truck" and was a professional driver trained to observe signs and lines in the roadway, and he testified he had been trained to use deceleration lanes. But counsel did not ask questions to determine the length of time Williams had been employed as a truck driver by Pepsi. Williams did state, "We're trained to basically make sure that all vehicles behind us and to the left of us are — to kind of know where they are." He also spoke of the "custom" of driving in the right-hand lane. While these responses did mention training and custom, they did not indicate the source of training and furthermore did not reveal that Williams was inadequately trained. The trial court has discretion to determine the scope of counsel's comments during closing argument. *Manning v. State*, 207 Ga. App. 181 (424 SE2d 521) (1993). Under these circumstances, the trial court did not abuse its discretion in limiting counsel's remarks on the adequacy of training provided by Pepsi.

9. Mrs. Norman contends the trial court erroneously granted Williams's motion for partial summary judgment as to punitive damages. Since Mrs. Norman did not recover general damages, punitive damages are not recoverable, and this issue is moot. See *Jenkins v. General Hospitals of Humana*, 196 Ga. App. 150, 152 (395 SE2d 396) (1990).

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED FEBRUARY 16, 1996 —
RECONSIDERATION DENIED FEBRUARY 28, 1996 —

*Richard E. Stark*, for appellant.
*Carr, Tabb & Pope, W. Pitts Carr*, for appellees.