A97A1414. GAFFRON v. METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY.
(494 SE2d 54)

JOHNSON, Judge.

Audrey Gaffron sued Metropolitan Atlanta Rapid Transit Authority ("MARTA") for damages sustained when she was struck by a MARTA bus while attempting to cross a street in Atlanta. A jury awarded Gaffron $20,000. Gaffron appeals, alleging that errors committed by the trial court resulted in a low verdict. For reasons which follow, we reverse.

The evidence at trial showed that the incident occurred at the intersection of 15th Street and West Peachtree Street. At this intersection, 15th Street is a four-lane road with two lanes for eastbound traffic and two lanes for westbound traffic. It dead-ends into West Peachtree Street, which is a one-way road with five lanes for northbound traffic. The intersection is governed by a pedestrian-control signal which exhibits the words "WALK" or "DON'T WALK." The two lanes of vehicular traffic turning from 15th Street onto West Peachtree Street have a green light at the same time the pedestrian signal exhibits the "WALK" signal for pedestrians to cross West Peachtree Street.

Gaffron pushed the pedestrian-control signal button, waited for the "WALK" signal to appear, and proceeded to cross West Peachtree Street. As Gaffron was waiting for the "WALK" signal to appear, the MARTA bus driver was stopped on 15th Street at the red light. When the light changed to green, the bus driver turned onto West Peachtree Street.

According to eyewitness Bobbie Jones, as the pedestrian signal changed to instruct pedestrians to cross the street, Gaffron placed

her foot directly into the crosswalk and never angled out of the crosswalk until she was struck by the MARTA bus. While Jones acknowledged that the bloodstain where Gaffron's leg was pinned by the bus was not in the crosswalk, she testified that when she last saw Gaffron, Gaffron was in the crosswalk. Jones opined that the bloodstain was outside the crosswalk because Gaffron was "knocked over to the side and knocked over from the impact of the bus." Jones saw "part of her body slide, hit to the ground."

Gaffron testified that the bus was right in front of her when she saw it, that she put up her arms and her elbows struck the right front door of the bus. She was trying to go backward away from the bus. According to Gaffron, she never considered going out of the crosswalk and she never, by her own volition and intent, took even one step outside the crosswalk. Rather, she was pushed out of the crosswalk by the bus or stepped out trying to avoid being hit by the bus.

Every witness, with the exception of MARTA's driver, who never saw any pedestrian, acknowledged that Gaffron was waiting on the curb at the crosswalk and entered the roadway inside the crosswalk. One witness testified, however, that Gaffron was outside the crosswalk when she was hit by the bus. According to Mae Murphy, Gaffron stepped into the crosswalk and walked about halfway across West Peachtree Street. Gaffron slowed to let a white van go by and started walking again. She then "walked out of the crosswalk going around the front of the bus" and was not in the crosswalk when the bus hit her. Murphy testified the bus driver stopped as soon as he hit Gaffron. In addition, the MARTA bus driver testified that the bus did not knock Gaffron in any direction but that she was hit at the front door and fell at the right front tire.

1. In enumerations of error one through four, Gaffron contends the trial court erred in failing to grant her motion for a directed verdict on liability and erred in charging the jury on ordinary care, the avoidance doctrine, and comparative negligence. Gaffron suggests these errors stemmed from the trial court's mistaken belief that she had a duty to look out for approaching vehicles.

This case is governed by OCGA § 40-6-22. This statute was specifically drafted by the legislature to deal with intersections which have pedestrian-control signals. The statute grants pedestrians the right of way when they cross the street in accordance with the signals:

"Whenever special pedestrian-control signals exhibiting the words WALK or DON'T WALK or symbols so directing a pedestrian are in place, such signals shall indicate as follows: (1) Flashing or steady WALK — Pedestrians facing such signal may proceed across the roadway in the direction of the signal. *Every driver of a vehicle*

*shall yield the right of way to such pedestrians.*" (Emphasis supplied.) OCGA § 40-6-22 (1) (pre-1995 statute). This statute does not mention the word crosswalk or contemplate the use of a crosswalk by the pedestrian.

This statute should be read in conjunction with OCGA § 40-6-21, which provides in pertinent part as follows:

"(a) The following meanings shall be given to highway traffic signal indications, *except those on pedestrian signals*: (1) Green indications shall have the following meanings: (A) Traffic, except pedestrians, facing a CIRCULAR GREEN signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. Vehicular traffic, including vehicles turning right or left, *shall yield the right of way to . . . pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited. . . .*" (Emphasis supplied.) OCGA § 40-6-21 (a) (1) (A) (pre-1995 statute). This statute mandates that a vehicle must yield the right of way to a pedestrian who is lawfully within the intersection (i.e., crossing the intersection in accordance with a flashing or steady WALK signal) *or* a pedestrian who is lawfully in a crosswalk.

MARTA contends that Gaffron had a duty to exercise ordinary care for her own safety, had a duty to avoid the consequences of any negligence on the part of its bus driver, assumed the risk of any injury, and was negligent because she was outside the crosswalk when she was struck by the bus. Gaffron contends she was not outside the crosswalk when she was struck, but was pushed out of the crosswalk upon impact. Where Gaffron was located when she was struck by the bus, however, is not determinative in this case.

It is true that both OCGA §§ 40-6-21 (a) (1) (A) and 40-6-22 (1) mandate that the driver of a vehicle *shall* yield the right of way to a pedestrian lawfully crossing an intersection. However, these statutes do not abrogate a pedestrian's duties to exercise ordinary care for her own safety and avoid the consequences of any negligence on the part of others. While a pedestrian is not required to continually look and listen to ascertain if vehicles are approaching (see *Whiteway Laundry & Dry Cleaners v. Childs*, 126 Ga. App. 617, 620 (10) (191 SE2d 454) (1972)), a pedestrian may not ignore traffic conditions and enter the roadway relieved of her duty to exercise ordinary care for her own safety. See *Harris v. Cates*, 105 Ga. App. 178, 182 (6) (123 SE2d 703) (1961), rev'd on other grounds, 217 Ga. 801 (125 SE2d 649) (1962) (failure of a pedestrian to look at all or to look at a given time for oncoming vehicles may, under some circumstances, constitute negligence).

In *Greene v. Helms*, 115 Ga. App. 447, 451 (154 SE2d 892) (1967), this Court held that even though vehicles were required to yield to pedestrians crossing the street within a crosswalk, and thus the

pedestrian was entitled to assume that an approaching vehicle would obey the rules of the road and yield the right of way to the pedestrian, a pedestrian may still be negligent in failing to look for vehicles. According to *Greene*, questions regarding comparative negligence are peculiarly for determination by the jury. Id.

"Certainly today ordinary care for [her] own safety requires a pedestrian upon entering any public street to look out in every direction from which traffic might approach and to ascertain that it is safe to enter the street. Having done this, [she] is under the further duty, 'while crossing or walking or standing in the roadway, to keep a reasonable lookout for passing vehicles, in order to avoid injury therefrom; and the failure to do so may constitute negligence . . . although it will not necessarily do so under all circumstances.' [Cit.]" *Harris*, supra at 183.

In short, the law does not, as Gaffron suggests, relieve a pedestrian who has the right of way from all duty to exercise ordinary care for her own safety or to avoid the negligence of a vehicle driver, if it is possible to do so, once it becomes apparent or should have become apparent to her. Rather, where there is evidence to support them, such issues should be left to jury resolution. This principle has been upheld on numerous occasions in the context of vehicular accidents. In *Kirkland v. Moore*, 128 Ga. App. 34, 35-37 (195 SE2d 667) (1973), involving an automobile/motorcycle collision at an intersection, we held that even though a motor vehicle driver has the right of way at an intersection and has the right to assume that drivers of other vehicles will yield the right of way and exercise the ordinary care required of them, the driver having the right of way is not relieved of his own duty to exercise ordinary care. *"His right of way and right to assume the absence of negligence by others do not entitle him to drive blindly or recklessly across an intersection . . . without regard to the conditions and consequences."* (Punctuation omitted; emphasis in original.) Id. at 36. See also *Stroud v. Woodruff*, 183 Ga. App. 628 (1), (2) (359 SE2d 680) (1987).

Gaffron testified that she was familiar with the area and had traversed the intersection on numerous previous occasions. She further acknowledged that she was aware that two lanes of traffic would be coming from 15th Street turning right onto West Peachtree Street at the same time she was crossing West Peachtree Street, yet she never looked back to her left after initially looking as she stepped into the crosswalk. Gaffron admitted she would have seen the bus had she looked to her left. Thus, while it is clear Gaffron had the right of way and while there is compelling evidence indicating the MARTA bus driver was violating OCGA § 40-6-20 by not yielding to Gaffron, there was evidence from which the jury could infer that Gaffron was familiar with the dangerous nature of the intersection yet

took insufficient precautionary measures, such as failing to look to her left, to ensure that the two lanes of traffic turning onto West Peachtree Street in accordance with a green light were stopping and allowing her to proceed across West Peachtree Street.

Gaffron testified that two cars, one in each turn lane, pulled up to the crosswalk and stopped for her, so she believed it was safe to cross the street. She denied that any cars passed in front of her as she was crossing the street. Three other witnesses testified that at least one vehicle passed in front of Gaffron while she was in the crosswalk. For example, Murphy testified that Gaffron "slowed and let [a white van] go by, then she started walking again." This testimony, coupled with Gaffron's admission that she did not look back to her left after her initial glance, was sufficient for a rational trier of fact to conclude that Gaffron failed in her duty to exercise ordinary care for her own safety and avoid the consequences of any negligence on the part of others.

Moreover, evidence produced at trial established that Gaffron may have seen the bus yet attempted to go around the front of the bus rather than allow the bus to pass in front of her. This evidence included the blood stain which purportedly corresponded to the location on the roadway where Gaffron's foot was pinned by the bus tire and Murphy's testimony that Gaffron left the crosswalk to proceed around the front of the bus.

Under the circumstances of this case, we must conclude that the issues of whether Gaffron maintained a diligent lookout for other vehicles upon entering the crosswalk and otherwise exercised due care for her own safety were proper subjects for the jury's consideration. See *Stroud*, supra. "To justify a charge on a given subject, it is not necessary there should be direct evidence going to that point; it is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it." (Citations and punctuation omitted.) *Carter v. Central of Ga. R. Co.*, 149 Ga. App. 867 (256 SE2d 149) (1979). "Only slight evidence need exist from which an inference of comparative negligence may be drawn to authorize such a charge. [Cit.]" *Norman v. Williams*, 220 Ga. App. 367, 370 (4) (469 SE2d 366) (1996). Accordingly, the trial court did not err in failing to grant Gaffron's motion for a directed verdict and in giving the jury the charges complained of.

2. Gaffron further contends the trial court erred in charging the jury on OCGA §§ 40-6-91 (b), 40-6-92 (a), and assumption of the risk. Gaffron contends the two statutes were inapplicable and the assumption of the risk charge was not authorized by the evidence. We agree.

OCGA § 40-6-91 (b), commonly known as the "dart out" statute, states that "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close

that it is impractical for the driver to yield." OCGA § 40-6-92 (a) provides that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway unless he has already, and under safe conditions, entered the roadway."

Although the trial court's charges set out a correct statement of the law, they did not conform to the evidence adduced at trial. The evidence is undisputed that Gaffron stepped into the crosswalk and proceeded at least halfway across the intersection, in the crosswalk, before she was struck by the bus. There was no evidence that she "darted out" or suddenly walked or ran into the path of the bus. Moreover, it is clear she had "already and under safe conditions entered the roadway." While a jury may infer that Gaffron was negligent in failing to observe the bus prior to impact or in attempting to walk around the front of the bus, it is clear that she entered the roadway, using the crosswalk, in accordance with the pedestrian-control signal. This is not the type of situation contemplated by OCGA § 40-6-91 (b) or OCGA § 40-6-92 (a), and the facts presented at trial did not warrant these jury charges.

Moreover, this is not the type of situation contemplated by the assumption of the risk defense. Clearly, if the dart out statute applied or if Gaffron had not been lawfully crossing the intersection, using the crosswalk, in accordance with the pedestrian-control signal, a charge on the assumption of risk would have been warranted. However, under the circumstances, it cannot be said that Gaffron assumed any risk. While a jury may have been authorized to find that Gaffron may have been negligent and should have exercised ordinary care for her own safety, it cannot be said that she assumed the risk that she would be injured under the circumstances she faced in this case. "In working out the distinction the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be." (Citation and punctuation omitted.) *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 824 (4) (409 SE2d 524) (1991); compare *Norman v. Williams*, 220 Ga. App. 367 (1) (469 SE2d 366) (1996). To apply the doctrine of assumption of risk where, as here, Gaffron was crossing the street in a crosswalk in accordance with the pedestrian-control signal is simply beyond the meaning of the doctrine.

"An instruction is erroneous which, although correct as an abstract principle of law, is not supported by evidence. [Cit.]" *Atlanta Gas Light Co. v. Redding*, 189 Ga. App. 190, 191 (3) (375 SE2d 142)

(1988). "As an essential issue for the jury's determination was the respective negligence of the parties, such a charge may have prejudicially affected the jury's determination." *Silvers v. Kimbell*, 219 Ga. App. 482, 484 (465 SE2d 530) (1995). In addition, giving a charge on the assumption of risk may have prompted the jury to find that Gaffron's injuries were somehow the result of her own voluntary assumption of the risk. *Beringause*, supra. We cannot say that the giving of these instructions was harmless. Thus, instructing the jury on these two Code sections and on the assumption of the risk, which was not authorized by the evidence, constituted reversible error. Id.

3. Gaffron asserts the trial court erred in giving a jury charge on the issue of magnified or exaggerated injuries. We agree.

The trial court charged the jury as follows: "If you believe from all of the evidence in this case that the plaintiff has either magnified or exaggerated her alleged damages or the cause therefore by reason of her interest in this suit, then you have the right and it would be your duty to disregard such evidence insofar as the same is unjustly magnified or unjustly exaggerated." MARTA concedes the charge was improper, as it has been expressly disapproved. See *Mathis v. Watson*, 259 Ga. 13 (376 SE2d 660) (1989). However, MARTA argues it is not reversible error because Gaffron only objected on the ground that it was not justified by the evidence and Gaffron did not point out to the trial court that such a charge had been disapproved by the appellate courts. This argument is specious, and, furthermore, MARTA fails to show how the charge was justified by the evidence.

Our review of the evidence presented at trial fails to establish any magnification or exaggeration of injuries on the part of Gaffron. Thus, not only has this charge been disapproved, but it did not conform to the evidence presented at trial. The charge may have improperly suggested to the jury that Gaffron's testimony in some way might have been magnified or exaggerated, thus contributing to a lower verdict than the jury might otherwise have rendered. Accordingly, we find the giving of this charge in the present circumstances constituted a substantial error which was harmful as a matter of law. See OCGA § 5-5-24 (c).

4. In her last enumeration of error, Gaffron contends the trial court erred in granting MARTA's motion to quash a notice to produce at trial.

Approximately 20 days prior to trial, Gaffron served a 14 paragraph notice to produce upon MARTA, requesting it to produce various documents including MARTA's policies, procedures, rules and regulations pertaining to the operation of a bus, as well as its driver's employment file. Only paragraphs three (MARTA rules, policies, etc.) and fourteen (the bus driver's personnel file) of the notice are at issue because the remaining documents were provided earlier or dealt with

in other pretrial motions. MARTA brought the requested documents to trial, but objected on the ground that the notice to produce sought "discovery" and the discovery period had expired. The trial judge granted MARTA's motion to quash, basing her ruling on Uniform Superior Court Rule 5.1, the six-month discovery rule.

Pursuant to OCGA § 24-10-26, a party may request the production of documents at trial by serving a notice to produce on an opposing party. Thus, the fact that the six-month discovery period had expired prior to Gaffron serving her notice to produce is irrelevant. The trial court, therefore, erred in granting MARTA's motion to quash on this ground. While MARTA argues that its motion to quash the requested material was correctly granted because the notice to produce was overly broad, the trial court did not rule on this ground, and we will not consider this separate ground as Gaffron may correct any deficiencies upon the retrial of this case.

*Judgment reversed. Pope, P. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 6, 1997 —
RECONSIDERATION DENIED NOVEMBER 18, 1997 — ▮▮▮▮

*Thomas W. Malone, Lawrence J. Pond*, for appellant.
*Chambers, Mabry, McClelland & Brooks, Walter B. McClelland*, for appellee.