**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 8, 2016**

# In the Court of Appeals of Georgia

A16A0168. ELDER v. HAYES.

McMILLIAN, Judge.

We granted Herman Elder's motion for interlocutory appeal of the trial court's order denying his motion for summary judgment in this action arising out of a fatal automobile collision. The wreck occurred when Wendell Hardigree's truck rear-ended Tiffany Hayes's sedan, causing it to spin and hit Elder's SUV. Hayes and two other occupants of her car (collectively referred to herein as the "Plaintiffs") sued Elder for negligence, and Elder argued in his motion for summary judgment that there was no evidence that his negligence, if any, proximately caused the Plaintiffs' injuries. We reverse the trial court's denial of Elder's motion for the reasons set forth below.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We

review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So viewed, the evidence shows that the accident in this case occurred on July 7, 2010 on Georgia Highway 10 near Athens.[1] At that location, Georgia Highway 10 is a four-lane divided highway with a 65-mph speed limit. Hayes was driving northbound in the outer, right-hand lane, with her mother's boyfriend seated next to her in the front passenger seat; her mother, Gloria Watkins, seated behind her in the left rear passenger seat; and her 23-month-old son Tobias sitting in a baby seat located in the right rear passenger seat. Tobias was strapped into the baby seat, but Georgia State Patrol ("GSP") investigators later determined that the baby seat was not properly secured to the car.[2]

---

[1] We note that in their briefs in the trial court and on appeal, the Plaintiffs cited to allegations in their unverified complaint to support certain of their factual statements without also providing a record citation demonstrating that the cited allegation had been admitted by Elder. We take this opportunity to remind counsel that "unsworn allegations in pleadings that have not been admitted by the opposing party are not evidence for purposes of summary judgment resolution." (Citation and punctuation omitted.) *Sirdah v. N. Springs Assoc., LLLP*, 304 Ga. App. 348, 352 (3) (696 SE2d 391) (2010).

[2] Hardigree also testified that when he went to Hayes's car after the accident, he observed that the baby seat was not strapped to the car.

At the pertinent time, Hardigree was driving a truck pulling a trailer and was traveling directly behind Hayes. An ambulance responding to an emergency call approached in the inner, left-hand lane with its lights flashing and siren sounding. Elder had just entered the highway from an on-ramp and was merging into the outer lane behind Hardigree when he saw and heard the ambulance coming. After the ambulance passed him, Elder pulled into the inner lane behind it to pass Hardigree's vehicle.

Meanwhile, Hayes heard the ambulance and braked to a stop. A factual issue exists as to whether she pulled completely onto the shoulder before stopping or whether at least a portion of her car remained in the lane of travel. Hardigree, still following Hayes, saw her vehicle stop and tried unsuccessfully to pull to the right to avoid hitting her car. Unable to stop or maneuver around Hayes's sedan, he crashed into the rear of the car (the "First Collision"). This collision crushed the back of the sedan and pushed the trunk partially inside the rear passenger compartment.

As Elder passed Hardigree in the inner lane, he saw that Hayes's car was slowing or stopped and realized that Hardigree was going to hit it. Elder steered into the median to avoid involvement in the crash, but when Hardigree hit Hayes, the impact of that collision pushed her car forward and spun it across the left, inner lane

3

of traffic and into Elder's SUV (the "Second Collision"). Hayes's car came to a rest in the median.

The driver of the ambulance turned back to render aid. Hayes had a cut on her head. Watkins suffered a broken pelvis, a bruise to her aortic valve, and other injuries, which she said led to complications in her kidneys and which required one to two months of hospitalization. Tobias sustained multiple skull fractures and, tragically, died later that day at an Atlanta hospital.[3]

After conducting an investigation, the GSP's Specialized Collision Reconstruction Team ("SCRT") concluded in a written report that the accident was caused by Hardigree following too closely behind Hayes ("SCRT Report") without assigning any fault to Hayes or Elder.

Hayes, Watkins, Tobias (through Hayes as his next friend), and Tobias's estate sued Hardigree[4] and Elder for personal injury and wrongful death. The Plaintiffs assert that Elder's "decision to closely trail the ambulance and not to move over and

---

[3] The record indicates that Watkins's boyfriend was also injured and transported to the hospital, but he is not a party to this litigation. Elder and Hardigree apparently were not seriously injured.

[4] The claims against Hardigree were dismissed by consent judgment, but those against Elder remain pending.

stop or slow down for the ambulance constituted negligence and resulted in his vehicle crashing into Tiffany Hayes' vehicle." The Plaintiffs also claim that Elder was negligent per se in committing a number of traffic violations, i.e., failing to yield to an emergency vehicle, following too closely, reckless driving, driving too fast for conditions, failure to exercise due care in the operation of a vehicle, and homicide by vehicle. Elder moved for summary judgment, arguing that there was no evidence that any negligence on his part — assuming any negligence existed — proximately caused the Plaintiffs' injuries. The trial court denied the motion, finding that genuine issues of material fact remained on the issue of proximate cause, but the court certified its order for immediate review.

Causation is but one of four elements required to establish a claim of negligence in Georgia. "In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty." (Citation and punctuation omitted.) *Diamond v. Dept. of Transp.*, 326 Ga. App. 189, 193 (2) (756 SE2d 277) (2014). However, "[s]ummary judgment is appropriate if there is a lack of evidence as to any *one* essential element of a party's claim or affirmative defense. If one essential

element cannot be proven, all of the other disputes of fact are rendered immaterial." (Citations and punctuation omitted; emphasis in original.) *Great Southwest Express Co., Inc. v. Great American Ins. Co. of New York*, 292 Ga. App. 757, 760 (1) (665 SE2d 878) (2008).

Here, the Plaintiffs put forth two theories of causation. The first theory asserts that Elder followed the ambulance too closely, preventing Hardigree from moving to the left to avoid crashing into Hayes, thus proximately causing the First Collision. The Plaintiffs' second theory of proximate cause posits that when "Hardigree's truck struck . . . Hayes's stopped vehicle[,] it pushed it from its stopped position into the path of . . . Elder's SUV that was closely trailing the ambulance, with the impact from . . . Elder's vehicle causing or contributing to the injuries and death complained of in the Plaintiffs' Complaint."

Although questions of causation are generally for the jury, "[n]evertheless, there must be sufficient evidence to create a jury question on the issue of causation." *Redmon v. Daniel*, 335 Ga. App. 159, 166 (1) (779 SE2d 778) (2015). Proof of proximate cause requires a showing of "a legally attributable causal connection between the defendant's conduct and the alleged injury." (Citation and punctuation omitted.) *Grinold v. Farist*, 284 Ga. App. 120, 121 (1) (643 SE2d 253) (2007).

6

Therefore, "[t]he plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." (Citation and punctuation omitted.) Id. However, "[a] mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant." (Citation omitted.) Id. at 121-22 (1).

On appeal, Elder asserts that the trial court erred in denying his summary judgment motion because (1) the record is void of any evidence that any alleged negligent act on his part contributed to the First Collision, and (2) the record contains no evidence establishing that his conduct proximately caused any injuries to Watkins or Tobias in the Second Collision.

1. With regard to the first of these arguments, Elder denies that he was following the ambulance too closely,[5] but he argues that even if he were following more closely than the law allows, the record contains no evidence that the location

_____

[5] Elder testified that the ambulance was "moving away from [him] rapidly" and that at the time of the collision the ambulance was "long gone" and "quite a ways in front of" the collision site.

7

of his vehicle prevented Hardigree from moving into the left lane to avoid the collision.

Elder testified that he had passed Hardigree's truck and was "enough in front of [Hayes's car] to where [he] could not see the impact, because it occurred behind [him]." Both Elder and Hardigree testified that Elder had moved over almost into the median when the First Collision occurred. Elder said that he thought he had cleared any danger until he felt the impact of the Second Collision. The Plaintiffs assert, however, that their expert's testimony and measurements in the SCRT Report raise an issue as to whether Elder's car had, in fact, passed Hardigree's truck or whether it was close enough to have prevented Hardigree from moving to the left to avoid a collision with Hayes's vehicle.

But Hardigree specifically testified that Elder's SUV did not obstruct him from moving left to change lanes and that he never intended to move left. He stated that as he applied his brakes, they locked, pulling the truck to the right, and he decided to let his truck go onto the right shoulder, not into the left lane, in an attempt to avoid the wreck. He explained, "I didn't have time to go to the left just like I didn't have time to stop." Hardigree further testified:

Q. Was there any time when Dr. Elder's white SUV obstructed you from going to the left?

A. No.

Q. It's my understanding that you didn't go to the left, because you ran out of time? Is that right?

A. Yeah, I was going to the right. I was going to go around on the shoulder. But I couldn't get stopped and slowed enough to get off the road.

Q. The position of his car had nothing to do with your not going left; did it?

A. No, because he was just about off the pavement when I spun [Hayes's car] around[;] it ran into him.[6]

Despite this testimony, the Plaintiffs argue that the evidence of record nevertheless raises an inference that the location of Elder's car somehow influenced Hardigree's decision to move right. In other words, the Plaintiffs argue that the jury could reject Hardigree's explanation for why he moved right and instead speculate

---

[6] Hardigree also testified that Elder was just trying to get out of the way and did not cause either the First or Second Collisions.

that he actually chose to move right because Elder's car was blocking the left lane. However, "a witness's uncontradicted testimony [cannot] simply be disbelieved in order to eliminate the evidence it provides." *Cowart v. Widener*, 287 Ga. 622, 633 (3) (c) (697 SE2d 779) (2010). Rather, on summary judgment,

> what one witness says on a material point [must be] genuinely contradicted by some other evidence—what another witness says, a prior statement by the witness, or a document or other piece of physical evidence. Once the pleadings are pierced with actual evidence, the plaintiff must point to admissible evidence showing a genuine issue of fact as summary judgment cannot be avoided based on mere speculation or conjecture.

(Citation omitted.) *Jobling v. Shelton*, 334 Ga. App. 483, 488-89 (779 SE2d 705) (2015). See also *Hill v. Jackson*, 336 Ga. App. 679, 681 (783 SE2d 719) (2016) ("Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.") (citation and punctuation omitted).

Accordingly, because the undisputed evidence shows that neither the location of Elder's car nor any actions taken by him caused the First Collision, the trial court erred in failing to grant summary judgment under the Plaintiffs' first theory of proximate cause.

10

2. Elder next argues that the trial court erred in denying his motion for summary judgment on the claims asserted by Watkins, Tobias, and Tobias's estate because the record contains no evidence that Elder's conduct, as opposed to Hardigree's actions, caused their injuries. Stated another way, he asserts that the record contains no evidence demonstrating whether Watkins's and Tobias's injuries were received in the First Collision or the Second Collision.[7]

The record contains no direct evidence of causation with respect to the injuries suffered by Watkins and Tobias. Medical records attached to the Plaintiffs' trial court briefing indicate only that their injuries occurred as a result of a motor vehicle collision, although the emergency room report shows that Watkins was complaining of pain in her left arm and hip and the EMT's report indicates that "*apparently* the front seat head rest struck [Tobias] in the head." (Emphasis supplied.) In support of the element of causation, the Plaintiffs cite to circumstantial evidence provided by their expert accident reconstructionist, licensed professional engineer Craig Depken,

_____

[7] Although Elder originally also sought summary judgment as to Hayes's claims for her own injuries, in his reply brief below, he withdrew the motion as to her claims, acknowledging that an issue of fact existed as to causation on such claims. We note that Hayes testified in her deposition that the injury to her head did not occur in the First Collision. She said that she received that injury when she hit the windshield during the Second Collision.

11

opining how the accident occurred. Depken did not claim to have any training as a biomechanical engineer, and he stated that he could not comment on the passengers' injuries, stating specifically that he did not know which of the two collisions caused the injuries to Tobias. However, he stated that he could testify about the inertial effect upon the occupants resulting from each collision. Depken opined that when Hardigree's truck collided with Hayes's car, the impact propelled her sedan into a forward spin, thrusting its occupants backwards into their seats and breaking the front seats in the car. The Second Collision with Elder's SUV, on the other hand, would have propelled the sedan's occupants upward and forward, which as the Plaintiffs argued in the trial court below, "provided the opportunity for the occupants of [Hayes's car] to be thrust forward and make contact with some portion of the interior of the [car]."

The Plaintiffs assert that the jury could rely on this testimony to determine which of the collisions resulted in the injuries to Watkins and Tobias. Nevertheless, even accepting Depken's evidence that in the First Collision, the occupants were pushed backward and in the Second Collision, they were pushed upward and forward, we find that this evidence does not establish that the injuries were more likely to have

occurred in the Second Collision than in the First Collision or that the Second Collision contributed to any of the injuries.

Watkins suffered a broken pelvis and a bruised aortic valve, injuries that also apparently affected her kidneys, but the record contains no evidence showing the location of the impact to Watkins (e.g., whether to Watkins's front, back, or side) or demonstrating the kind of impact that could have resulted in her injuries. And we cannot say that the kind of impact required to create such injuries is within the common knowledge and experience of the average lay person so that a jury could determine, without further information, which of the two collisions was more likely to have caused her injuries. See *Cowart*, 287 Ga. at 628 (2) (b).

Further, the evidence showed that Tobias suffered head fractures, possibly caused by impact with the front headrest, and that Tobias's car seat was not attached to the car. Depken testified that the front seat broke during the First Collision. Thus, it is unclear from the evidence whether Tobias's head injuries could have occurred during the First Collision when the seat in front of him broke or whether it was more likely to have occurred during the Second Collision when the occupants were projected forward.

13

In the absence of clear evidence indicating which of the collisions caused, or was more likely to have caused, the injuries to Tobias or Watkins, we are guided by this Court's earlier decision in *Berry v. Hamilton*, 246 Ga. App. 608 (541 SE2d 428) (2000). In *Berry*, a motorcyclist fell off her motorcycle on I-285 and then was run over by Hamilton, who stopped and called 911. After police arrived but before they could stop traffic, they saw two other unknown drivers run over the motorcyclist, who was dead at the scene. Id. at 608. Doctors could not pinpoint which of multiple life-threatening injuries had killed her, or when. Thus, the doctor could not determine whether the motorcyclist had died when she fell off her motorcycle or when she was later run over by several automobiles. Id. at 609-10. In a subsequent suit filed by the victim's survivors, this Court affirmed the grant of summary judgment to Hamilton, holding that there was no evidence that he had proximately caused her death, as it was also possible that she could have died in the initial fall from the motorcycle. Id. at 610. The Court held that "[w]hen a party is relying on inferences to prove a point, not only must those inferences tend in some proximate degree to establish the conclusion sought, but must also render less probable all inconsistent conclusions." (Citation omitted.) Id. Thus, "[t]he circumstantial evidence must be sufficient to establish a

14

reasonable inference that [the defendant] caused [the injuries]. If it raises only a mere conjecture as to how [the injuries occurred], there can be no recovery." Id.

Here, the evidence shows only that the Second Collision presented an "opportunity" for injury, as the Plaintiffs argued below, but the evidence also presents the possibility that Watkins and Tobias suffered their injuries in the First Collision. Because the circumstantial evidence of record leaves the jury to conjecture how and when the injuries to Watkins and Tobias occurred, the trial court erred in denying Elder's motion for summary judgment as to their claims. See *Redmon*, 335 Ga. App. at 166-67 (1); *Dawkins v. Doe*, 263 Ga. App. 737, 740 (1) (589 SE2d 303) (2003); *Berry*, 246 Ga. App. at 610.

*Judgment reversed. Miller, P. J., and McFadden, J., concur.*