**FIFTH DIVISION
MCFADDEN, P. J.,
RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 12, 2019**

# In the Court of Appeals of Georgia

A18A1893. GUTIERREZ et al. v. HILTI, INC.

McFADDEN, Presiding Judge.

Husband and wife Jose A. Gutierrez and Selene Perez appeal from the grant of summary judgment to Hilti, Inc. in their consolidated actions for Gutierrez's personal injury and Perez's loss of consortium. They allege in their actions that they were harmed by Hilti's negligence in selling, through one of its retail outlets, a concrete anchor without either the instructions or the setting tool necessary for its proper installation. They allege that, as a result, the anchor was improperly installed and failed, causing a workplace accident in which Gutierrez was injured. Hilti moved for summary judgment, arguing among other things that there was no evidence showing the required elements of duty and causation, and the trial court granted the motion.

Because the record evidence gives rise to genuine issues of material fact on both elements, we reverse.

1. *Facts and procedural history.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). "We review a grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmovants and drawing every reasonable inference in their favor." *Patterson v. Kevon, LLC*, 304 Ga. 232, 236 (818 SE2d 575) (2018) (citation omitted). Gutierrez and Perez argue, and we agree, that at times the trial court did not construe contested facts in this light in her order. The recitation of facts below reflects our de novo review of the evidence in this case, viewed most favorably and giving every reasonable inference to the nonmovants, Gutierrez and Perez.

So viewed, the evidence shows that on November 11, 2012, Gutierrez was performing electrical work on the site of a construction project. He was standing on a 12-foot A-frame ladder. A foot away from him, an air handler (a component of an air conditioning, or HVAC, system weighing at least eighty pounds) was suspended

2

from the concrete ceiling by eight-foot-long rods that were set into the concrete. One of the rods dislodged from the ceiling, causing the air handler to fall toward the floor. Nearly simultaneously, Gutierrez was struck in the face, he believes by something that had been holding up the air handler. This caused him to lose his balance and fall at least ten feet from the ladder to the floor. He sustained significant injuries, which negatively affected his relationship with Perez.

The air handler had been installed one or two days before the accident using Hilti-branded concrete anchors purchased at a Hilti retail store.[1] The general contractor on the construction project required all subcontractors to use a specific Hilti anchor. The subcontractor responsible for installing the HVAC system (hereinafter, the "HVAC subcontractor" ) provided information about the required anchor to Greg Smith, an independent contractor hired by the HVAC subcontractor to perform that work. Smith took the model number of the anchor to the Hilti store, which sold him a box of the anchors and a special tool for installing the anchors in the concrete ceiling (hereinafter, the "setting tool").

---

[1] The parties dispute whether Hilti is also the manufacturer of the anchors, but that issue is not material to our resolution of this appeal.

The proper procedure for installing the anchors is as follows: The installer drills a hole to a specified depth, cleans out the hole, inserts the anchor and the setting tool into it, and then hammers in the setting tool, causing the tip of the anchor to expand into the concrete. The installer then removes the setting tool and screws a rod into the anchor. The appropriate setting tool for the anchors used in this case has "dimples" that create indentations in the flange of an anchor to provide visual confirmation that the setting tool has been hammered far enough into the flange to expand the anchor into the concrete. The instructions that are supposed to accompany the anchors explain this process. They state: "Setting tool leaves mark on flange when anchor is set properly to enable inspection and verification of proper expansion."

The Hilti store sold Smith a box of anchors that did not include those instructions and Smith did not see the instructions before his workers, under his supervision, installed the anchors for the air handler. Instead, Smith consulted instructions that he found on the internet. He did not see, on those instructions, information about using marks from the setting tool to obtain visual confirmation that an anchor was properly installed. Smith did not know to look for marks on the flanges of the anchors as he supervised his workers' installation of them.

Moreover, the Hilti store did not sell Smith the correct setting tool to use with the anchors. The setting tool that Smith bought for his workers to use did not have "dimples" and did not create marks that would allow Smith to confirm that the anchors had been properly installed. So although Smith visually inspected each installed anchor, none of the anchors he inspected had the marks described in the instructions. This incorrect setting tool was the only tool the Hilti store offered to Smith in conjunction with his purchase of the anchors.

After Gutierrez's accident, both Smith and the HVAC subcontractor separately went to the Hilti store and asked for the setting tool appropriate for the specific anchors used in the construction project. On both occasions, the Hilti store offered them the incorrect setting tool. Also after the accident, the general contractor required all subcontractors to check the anchors they installed for the marks described in the instructions. Numerous anchors did not display those marks, and the general contractor required that they be reinstalled using the correct setting tool. The concrete itself was not replaced.

Gutierrez sued Hilti, among other defendants, for negligence and breach of warranty. Perez sued Hilti for loss of consortium based on Hilti's alleged negligence. The trial court granted summary judgment to Hilti on all of these claims. On appeal,

Gutierrez and Perez do not make any arguments pertaining to breach of warranty, so they have abandoned any claim that summary judgment as to breach of warranty was improper. See Ga. Ct. App. R. 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

2. *Breach of duty.*

Hilti argues that it is entitled to summary judgment because, as a matter of law, it breached no duty of care to Gutierrez or Perez. We disagree.

Gutierrez and Perez argue that Hilti breached a duty of care in selling Smith the incorrect setting tool. There is a "general duty one owes to all the world not to subject them to an unreasonable risk of harm." *Weller v. Blake*, 315 Ga. App. 214, 219 (2) (726 SE2d 698) (2012) (citation omitted). Moreover, as discussed elsewhere in this opinion, there is evidence that Hilti sold Smith the wrong tool. Whether Hilti breached its general duty of care by selling Smith the wrong tool is a genuine issue of material fact precluding summary judgment.

Gutierrez and Perez also argue that Hilti is liable to them for failing to include instructions in the box of anchors it sold to Smith, under a theory of failure to warn. Under that theory, the seller of potentially dangerous goods has a duty to warn the

6

purchaser of that danger at the time of sale and delivery. See *Everhart v. Rich's, Inc.*, 229 Ga. 798 (1) (194 SE2d 425) (1972); *Potts v. UAP-GA AG CHEM, Inc.*, 256 Ga. App. 153, 158 (4) (567 SE2d 316) (2002); *Beam v. Omark Indus.*, 143 Ga. App. 142, 145 (1) (b) (237 SE2d 607) (1977). Gutierrez and Perez assert that the anchors are potentially dangerous if improperly installed, and that Hilti failed to provide the instructions necessary to warn against their improper installation.

We are not persuaded by Hilti's argument that it had no duty to warn because Smith was a "sophisticated user" of the anchors. Smith testified that he had no experience with the setting tool required for the specific type of anchor used on the construction project and that, without the benefit of the instructions, he did not know that he should be looking for visual confirmation of proper installation. "Whether a duty to warn exists depends upon foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger. Such matters generally are not susceptible of summary adjudication and should be resolved by a trial in the ordinary manner." *R&R Insulation Svcs. v. Royal Indem. Co.*, 307 Ga. App. 419, 427 (3) (705 SE2d 223) (2010) (citation and punctuation omitted) (affirming denial of summary judgment in case in which a plaintiff, who allegedly was a "sophisticated user" of fiberglass reinforced panels, claimed that a defendant

7

breached a duty to warn consumers about the methods of fastening the panels to ceilings).

3. *Causation.*

Hilti argues that it is entitled to summary judgment because there is no competent evidence showing the necessary causal link between its sale of the concrete anchors and setting tool to Smith and the accident that injured Gutierrez. Hilti challenges the evidence on several fronts, arguing that there is no competent evidence that it sold Smith the wrong setting tool, that the anchor was improperly installed on the job site, that the use of the wrong setting tool caused the improper installation, or that improper installation caused the anchor to fail. Hilti argues, therefore, that the evidence of the necessary causal link is too speculative or conjectural to survive summary judgment. We disagree.

It is true that

> guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment. A plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough.

*Hunsucker v. Belford*, 304 Ga. App. 200, 202-203 (1) (695 SE2d 405) (2010) (citation and punctuation omitted). But contrary to Hilti's argument, the evidence in this case, viewed most favorably to Gutierrez and Perez, affords a reasonable basis for such a conclusion.

First, the record contains direct evidence that Hilti sold Smith the wrong setting tool and that the proper setting tool was not used to install the anchor that failed. Smith himself expressly testified to both of these points.

Second, while there is no direct evidence about precisely how the accident occurred, this does not mean that Hilti is entitled to judgment as a matter of law. See *Parke Town North Apartments v. Castro*, __ Ga. App. __, __ (4) (__ SE2d __) (Case No. A18A1985, decided March 6, 2019) (affirming denial of summary judgment despite lack of direct evidence as to how accident occurred). There is circumstantial evidence that the anchor failed because it was improperly installed and that this caused Gutierrez to fall off the ladder. "Circumstantial evidence can be described as evidence which does not constitute direct proof with regard to the issue of fact or the hypothesis sought to be proven by the evidence; rather, circumstantial evidence constitutes proof of other facts consistent with the hypothesis claimed." *Patterson*, 304 Ga. at 236 (citation and punctuation omitted).

9

The evidence that the wrong tool was used is consistent with the hypothesis that the anchor was improperly installed. The evidence that the flange of the failed anchor did not have marks showing that its tip had expanded sufficiently into the concrete is also consistent with this hypothesis. To this point, Smith agreed in his deposition that, because he did not have the proper instructions or setting tool, he "couldn't do [his] job right[.]" The evidence that the anchor and rod came loose from the ceiling is consistent with the hypothesis that the improperly installed anchor caused the air handler to fall. And the evidence that, at the same time the air handler fell, Gutierrez was knocked off of his ladder one foot away is consistent with the hypothesis that the falling air handler caused Gutierrez's fall.

For Gutierrez and Perez to prevail on their claims against Hilti, however, this circumstantial evidence "must be sufficient to establish a reasonable inference that [Hilti's negligence] caused [the accident that led to Gutierrez's] injuries." *Elder v. Hayes*, 337 Ga. App. 826, 833 (2) (788 SE2d 915) (2016) (citation and punctuation omitted). "Circumstantial evidence . . . may be sufficient for a plaintiff's claim to survive summary judgment, if other theories are shown to be less probable. . . . In those circumstances, the question as to the sufficiency of the circumstantial evidence,

and its consistency or inconsistency with alternative hypotheses, is a question for the jury." *Patterson*, supra (citation, punctuation, and emphasis excluded).

While Hilti offers alternative hypotheses for the anchor's failure that are plausible — bad concrete, an improperly threaded rod, or the possibility that someone hung or swung from the air handler's platform — it is reasonable to infer from the evidence in this case that these alternative theories are less probable than the theory that the anchor failed because it was improperly installed, and it was improperly installed because the person responsible for installing it lacked the necessary setting tool and instructions to do the job properly. Under the rationale of *Patterson v. Kevon, LLC*, 304 Ga. 232, it was for the jury to assess these various hypotheses. See also *Parke Towne North Apartments*, __ Ga. App. at __ (4).

Finally, we find no merit in Hilti's contention that Smith's failure to read the instructions precludes a failure to warn claim. The very foundation of the plaintiffs' failure to warn argument is that Hilti did not give Smith the instructions that it claims he was responsible for reading. Smith testified that, had Hilti provided those instructions, he would have read them. And as discussed above, the evidence viewed most favorably to Gutierrez and Perez shows that Smith never saw the correct instructions until after the accident occurred.

11

*Judgment reversed. Rickman and Markle, JJ., concur in judgment only.***

**THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 32.2.**