**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A1454. REDMON et al. v. DANIEL et al.

BRANCH, Judge.

Danny Jermont Daniel died as a result of being struck by one or more motor vehicles while walking along an exit ramp on Georgia Highway 316 in Gwinnett County. Connie June Daniel, as Danny's surviving spouse and administrator of his estate, sued Kelly Anne Gitaitis and Bobby Redmon, the drivers of the two vehicles involved in the incident. She also sued Redmon's employer, Republic Services of Georgia, L. P., d/b/a United Waste Services ("Republic"). Daniel asserted a claim for wrongful death, alleging that the negligence of Gitaitis and Redmon proximately caused her husband's death; she further alleged that Republic, as Redmon's employer, was vicariously liable for his negligence. A jury found in favor of Daniel and apportioned 42 percent of the liability for Danny's death to Redmon and his

employer. Redmon and Republic now appeal from the trial court's order of judgment as well as the denial of their motion for judgment not on verdict, arguing that there was insufficient evidence to prove that any alleged negligence of Redmon proximately caused Danny's death. For reasons explained more fully below, we agree and therefore reverse the judgment of the trial court.

"On appeal from the denial of a motion for a directed verdict or for j.n.o.v., we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict." *Park v. Nichols*, 307 Ga. App. 841, 845 (2) (706 SE2d 698) (2011) (citation and punctuation omitted). So viewed, the evidence shows that at approximately 5:00 a.m. on the morning of September 16, 2009, Danny was walking in or next to the roadway of the exit ramp from Georgia Highway 316 to Georgia Highway 120. At the time, Danny was dressed in dark green shorts and a black tee shirt. As Danny was traveling the exit ramp on foot, Gitaitis, driving a Chevrolet Tahoe, exited Highway 316 and proceeded along the ramp towards Highway 120. Gitaitis was followed by a Mack garbage truck owned by Republic and driven by Redmon. The portion of Highway 316 from which the exit ramp runs is a controlled access highway on which pedestrians are not allowed. There are no street lights present on the tree-lined exit

2

ramp, and several witnesses, including the officers who investigated the accident, testified that there is no ambient lighting on the ramp from any nearby street signs. The evidence also showed that the exit ramp was particularly dark on the morning in question, as it was cloudy with either a mist or light rain falling.

The speed limit on Highway 316 is 55 miles per hour, and Gitaitis and Redmon were moving along the exit ramp at between 40 and 50 miles per hour, with the garbage truck traveling approximately 200 feet behind the Tahoe. According to both Gitaitis and Redmon, Gitaitis was traveling along the middle of the exit ramp when she struck Danny, who Gitaitis said was in the middle of the road. Gitaitis testified that although she had her high-beam headlights on and was looking straight ahead, she did not see Danny until her car hit him.

Based on the evidence, both the police and the medical examiner believed that the initial impact was between the right, front side of Gitaitis's vehicle and the left side of Danny's lower body. Following this impact, Danny's body was thrown onto the hood of Gitaitis's Tahoe, with his head shattering her windshield and creating a large hole on the passenger side of the glass. Danny's body then came off of the Tahoe and was airborne for a short time before landing on the pavement in the middle of the roadway. Although Redmon did not see the initial impact, he did see something

3

that he believed was a deer come off Gitaitis's vehicle and land in the roadway. Because the body was coming off the right side of the Tahoe, Redmon took the only evasive action available to him, which was to brake and swerve to the left. When Redmon felt the empty garbage truck begin to tip, he corrected the steering wheel back to the right. At some point, the rear tires of the garbage truck ran over Danny's head.

With respect to the cause of her husband's death, Daniel presented the testimony of Dr. Carol Terry, the Chief Medical Examiner for Gwinnett County. Based on the evidence available to her, Dr. Terry testified that there were three potential causes of Danny's death: the blow to Danny's head when he struck Gitaitis's windshield; the blow to Danny's head when he landed on the pavement; and the rupturing of Danny's skull.[1] Dr. Terry further testified that she could not say that one cause of death was more likely than any other and that she had no way to tell if Danny was alive when the garbage truck hit him.[2] She explained that head injuries caused

---

[1] Danny's death certificate listed the cause of his death as "generalized blunt force trauma with bursting rupture of the head" as the result of being "struck by [ ] motor . . . vehicles."

[2] Dr. Terry's inability to determine whether either of the first two impacts was fatal resulted from the fact that because of the injury inflicted by the garbage truck, Danny's skull and brain were not available for examination.

4

by hitting the windshield and striking the pavement would have been blunt force trauma injuries, both of which were potentially fatal. Dr. Terry testified that although in some cases a blow to the head can cause instantaneous death, in most such cases death is not instantaneous, and it takes longer than two to three seconds for a person suffering a blunt-force head trauma to die. Thus, Dr. Terry concluded that while it was a medical possibility that Danny was alive at the time the truck struck his head, she could not say that it was a reasonable medical probability.

Daniel's theory of negligence as to Redmon was that he was following too closely behind Gitaitis's vehicle and was therefore unable to stop in time to avoid hitting her husband. In support of this theory, Daniel presented evidence that as a commercial truck driver, Redmon was required to maintain a minimum four-second following distance between his truck and any other vehicle. Given Redmon's statement to police that he was approximately 200 feet behind Gitaitis at the time of the accident and that he was traveling at between 45 and 50 miles per hour, however, his following distance behind Gitaitis was only between 2.7 and 3 seconds. And had Redmon had an additional 1 to 1.3 seconds of reaction time, Daniel argued, he could have avoided hitting her husband.

To counter this theory of liability, the defense presented evidence in the form of expert testimony and testimony from members of the accident investigation team that investigated the events surrounding Danny's death. Those witnesses stated that it appeared from the location of the body and other debris that Gitaitis's car struck Danny while he was in the middle of the roadway, rather than on the shoulder. Additionally, as explained more fully below, these witnesses uniformly testified that, given the circumstances, an increased following distance would not have allowed Redmon to avoid hitting Danny. Thus, each of the witnesses testified that they did not view Redmon's speed or his following distance as a factor in Danny's death.

At both the close of the plaintiff's case and at the close of all evidence, Redmon and Republic moved for a directed verdict, arguing that Daniel had failed to prove the causation element of her negligence claim against them. The trial court denied each of these motions and allowed the case to go to the jury.[3] The jury returned a $1.6 million verdict in favor of Daniel and apportioned liability as follows: 23 percent to Gitaitis, 35 percent to Danny, and 42 percent to Redmon and Republic. Redmon and Republic then filed a motion for j.n.o.v. After a hearing, the trial court

---

[3] Gitaitis also twice-moved for a directed verdict, and the trial court denied each of those motions.

6

denied that motion. Redmon and Republic now appeal from both the order denying their motion for j.n.o.v. and the order of judgment.

To prevail on her negligence claim against Redmon and Republic, Daniel was required to prove by a preponderance of the evidence that Redmon had a legal duty to conform to a certain standard of conduct so as to protect others against unreasonable risks of harm; that Redmon breached this standard; that Daniel suffered a loss or damages as a result of the Redmon's alleged breach of his legal duty; and that there was a legally attributable causal connection between Redmon's conduct and the resulting injury. *Anneewakee, Inc. v. Hall*, 196 Ga. App. 365, 367 (1) (396 SE2d 9) (1990). A "preponderance of the evidence," in turn, simply requires that the evidence show a rational factfinder that a particular fact is more likely than not. See *Zwiren v. Thompson*, 276 Ga. 498, 499 (578 SE2d 862) (2003) (the preponderance of the evidence "standard requires only that the finder of fact be inclined by the evidence toward one side or the other") (citation and punctuation omitted). "[A]nd to prove causation, the plaintiff must show that the wrongdoing is both a cause in fact and a proximate cause of the injuries [alleged]." *Strength v. Lovett*, 311 Ga. App. 35, 40 (2) (a) (714 SE2d 723)(2011). Thus, to prove the causation element of her negligence claim Daniel was required to introduce evidence which provided the jury

7

with "a reasonable basis for the conclusion that it is more likely than not" that Redmon's allegedly negligent conduct "was [both] a cause in fact" and a proximate cause of her husband's death. *Wolfe v. Carter*, 314 Ga. App. 854, 856-857 (1) (726 SE2d 122) (2012) (citation and punctuation omitted). If the evidence presented only a "mere possibility" that Redmon's conduct was either a cause in fact or a proximate cause of Danny's death such that the question of causation remained "one of pure speculation or conjecture," or if the evidence showed that "the probabilities [were] at best evenly balanced," then Redmon and Republic were entitled to judgment in their favor as a matter of law. Id. at 857 (1) (citation and punctuation omitted).

1. Bearing the foregoing principles in mind, we turn to the claims of error asserted by Redmon and Republic.

We begin by addressing Redmon's and Republic's claim that Daniel failed to prove that any alleged negligence by Redmon was a cause in fact of the accident.[4] As

---

[4] In their second enumeration of error, Redmon and Republic assert that Daniel "failed to prove her negligence claim" because the evidence showed that the accident was unavoidable and not the result of any negligence by Daniel. They then argue that given the unavoidable nature of the accident, Daniel failed to prove that Redmon was negligent. As explained herein, however, this argument really goes to the issue of causation, and specifically whether Redmon's alleged negligence was a cause in fact of the accident. In her reply brief, Daniel does not address the appellees' arguments as to the unavoidable nature of the accident.

8

noted above, Daniel contended that Redmon acted negligently by failing to maintain at least a four-second following distance behind Gitaitis. She further contended that this negligence proximately caused her husband's death because the proper following distance would have provided Redmon with additional reaction time, thereby allowing him to avoid Danny's body as it lay on the exit ramp. The appellants, however, point to evidence showing that even had Redmon maintained a greater following distance, he nevertheless would have been unable to avoid running over Danny. In light of this evidence, Redmon and Republic contend that Daniel failed to prove that any negligent conduct by Redmon was a cause in fact of her husband's death. We agree.[5]

---

[5] In her brief, Daniel argues, without any citation to legal authority, that Redmon and Republic are precluded from asserting this claim of error because they did not raise "any issue of Redmon's negligence" in the court below. However, a party is free to "contend on appeal that the evidence is insufficient to support a verdict even if the party failed to move for a directed verdict[, a j.n.o.v.,] or new trial in the trial court." *Aldworth Co. v. England*, 281 Ga. 197, 199 (637 SE2d 198) (2006). Moreover, a party may challenge the denial of a morion for a directed verdict even if it does not file a motion for j.n.o.v., and "the essence of a motion for directed verdict is that there is insufficient evidence as a matter of law for a jury to find for a party's opponent." Id. at 200. Thus, a party who moved for a directed verdict as to a specific claim will be entitled to judgment as a matter of law on that claim "if she prevails on her [argument] on appeal that the evidence is insufficient to support the verdict" as to that claim. Id. at 199. Here, Redmon and Republic twice moved for a directed verdict on Daniel's negligence claim. Accordingly, on appeal they are free to challenge the sufficiency of the evidence as to that claim, even if they did not raise in the court below the specific arguments set forth on appeal.

As we have explained previously,

> it is axiomatic that the mere fact that an accident happened and [that] the plaintiff may have sustained injuries or damages affords no basis for recovery against a particular defendant unless the plaintiff carries the burden of proof and shows that *such accident and damages were caused by specific acts of negligence on the part of that defendant*.

*Cromer v. Hodges*, 216 Ga. App. 548, 549 (1) (455 SE2d 94) (1995) (citation and punctuation omitted; emphasis supplied). Thus, a "plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." *Hunsucker v. Belford*, 304 Ga. App. 200, 202-203 (1) (695 SE2d 405) (2010) (footnote omitted). And where an event would have occurred even in the absence of the defendant's negligence, that negligence, as a matter of law, cannot be a cause infact of the event. *Cowart*, 287 Ga. at 631 (3) (a); *Strength*, 311 Ga. App. at 44 (2) (b).

At trial, the defense presented substantial and unrebutted evidence showing that Redmon's alleged negligence in failing to maintain a following distance of four seconds or more did not cause or contribute to his running over Danny and that increasing his following distance would not have allowed Redmon to avoid hitting

10

Danny. This evidence included the testimony of Officers Mark Dau and James Dobbins of the Lawrenceville Police Department accident investigations unit, as well as Captain Jeff Smith, the head of that unit. Dau was on the team that investigated the accident at issue, and Dobbins was the lead investigator. Smith was not involved in the investigation of this particular accident, but Republic hired him to serve as an expert witness on behalf of both Redmon and the company.

Smith testified that if Redmon had maintained a four-second following distance, he would have been between 264 and 293 feet behind Gitaitis. Given the darkness of the exit ramp, however, Redmon could not have seen anything that was not illuminated by his headlights. And Redmon's low-beam headlights would have illuminated a maximum of 200 feet in front of the garbage truck. In short, no matter how great the following distance, it would have been impossible for Redmon to see Danny until he was no more than 200 feet away from him. And all of the evidence showed that Redmon was approximately 200 feet away when he saw Danny's airborne body after the first impact and that he immediately took evasive action, to no avail.[6]

---

[6] Both Dau and Dobbins testified that by taking the evasive action of braking and swerving to the left, Redmon had exercised the best and only option available to him under the circumstances.

Moreover, as Smith explained, if Redmon's following distance were changed, his entire perspective of the scene on the exit ramp would also have been changed. With a greater following distance, Redmon would not have been in a position to see Danny coming off of Gitaitis's vehicle.[7] Under such circumstances, in which Redmon had no way to know of Danny's presence in the road, Redmon would have been coming upon a dark-clad body lying in the middle of the roadway. Thus, a greater following distance would have made it impossible for Redmon to know of Danny's presence in the roadway until it was too late to take evasive action. It was Smith's opinion, therefore, that Redmon's running over Danny was unavoidable, even if you increased the following distance.

Dau provided similar testimony, explaining that following distance plays a significant role in accidents that occur during daylight hours, when motorists can see

---

[7] The evidence showed a significant possibility that a greater following distance would have resulted in Redmon still being on Highway 316, rather than on the exit ramp, at the time of the initial impacts. Smith testified that Danny's body was located 200 feet up the exit ramp. The evidence showed that the body most likely remained where it landed after coming off of Gitaitis's car and at the same location where Redmon ran over it. There was no evidence showing that Redmon's truck had dragged the body any distance. Additionally, Redmon had just exited Highway 316 and was at the bottom of the exit ramp when he witnessed Danny come off the right side of Gitaitis's car. Thus, had Redmon been following at a distance greater than 200 feet, he may not have been present on the exit ramp at the time of the first and second impacts and would not have had the opportunity even to attempt evasive action.

a significant distance down the road and are not limited by the illumination provided by their headlights. In night time accidents such as this one, however, following distance plays less of a role because a driver can only react to that which he sees, and vision at night is more limited. Thus, Dau reiterated that unless Redmon's following distance put him in a position to see Danny coming off of Gitaitis's vehicle, he could not react at all to Danny's presence in the road. As Dau explained, it would have been significantly more difficult for Redmon to perceive a dark-clad body lying in the middle of the roadway than to see that same body while airborne. And Redmon would have been unable to see Danny's body until he got within 200 feet of it, too late to allow him to avoid running Danny over. Accordingly, Dau was also of the opinion that under the circumstances of the case, Redmon could not have avoided hitting Danny.

Dobbins's testimony reenforced that of Smith and Dau, as he testified that the police did not view following distance as a factor in the accident. Instead, the conclusion of the accident investigation team was that the impact between Redmon and Danny could not have been avoided.

Notably, none of this testimony was refuted. Although Daniel elicited testimony from Dau that the greater the following distance, the more time a driver

would have to react, that testimony assumed that the driver could see that which he was reacting to – i.e., the presence of Danny in the roadway. Daniel presented no testimony, however, that under the circumstances of this case an increased following distance would have allowed Redmon to avoid running over Danny. Rather, all of the testimony addressing the conditions present during this particular accident showed that Redmon's collision with Danny was unavoidable. Accordingly, the evidence did not provide the jury with a reasonable basis for concluding that any negligence by Redmon was a cause in fact of Danny's death. "A plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." *Post Properties v. Doe*, 230 Ga. App. 34, 39 (495 SE2d 573) (1997) (citations and punctuation omitted).

We recognize that questions of causation are normally for the jury. See *Walker v. Giles*, 276 Ga. App. 632, 639 (1) (624 SE2d 191) (2005). Nevertheless, there must be sufficient evidence to create a jury question on the issue of causation. See *Reeves v. Mahathre*, 328 Ga. App. 546, 550 (759 SE2d 926) (2014). Thus, the defendant will be entitled to judgment as a matter of law where "the record is devoid of any evidence that [the defendant's negligence] was a cause in fact of" the plaintiff's injury. *Jackson*

14

*v. Wal-Mart Stores*, 206 Ga. App. 165, 167 (424 SE2d 845, 847) (1992). See also *Cowart*, 287 Ga. at 636 (3) (d). Here, the undisputed evidence showed that it was more likely than not that the accident between Redmon and Danny would have occurred even in the absence of any negligence by Redmon. Accordingly, Redmon's conduct cannot, as a matter of law, be a cause of that accident. See *Cowart*, 287 Ga. at 636 (3) (d) (defendant in a wrongful death action was entitled to summary judgment where doctor testified that he could not say if decedent would have survived absent the defendant's negligence); *Hunsucker*, 304 Ga. App. at 202 (1) (defendant entitled to summary judgment where evidence showed only that defendant was driving "within the alleged speed limit on a familiar road at night in mist and, after cresting a hill, could not avoid a black-clothed pedestrian stepping into his lane"). We therefore find that the trial court erred in denying Redmon's and Republic's motions for a directed verdict and their motion for j.n.o.v.

2. Redmon and Republic also assert that Daniel failed to prove proximate cause of her negligence claim. Specifically, they assert that to prove that Redmon's alleged negligence was a proximate cause of Danny's death, Daniel was required to prove that her husband had survived his collisions with Gitaitis's car and the pavement and that he was alive when the garbage truck ran over him. Redmon and Republic argue

15

that Daniel failed to meet this burden because she failed to come forward with any expert medical testimony which would have allowed the jury to conclude that Danny had survived the first two impacts. See *Cowart*, 287 Ga. at 626-627 (2) (a) (plaintiff must prove causation by expert testimony "where the existence of a causal link between the defendant's conduct and the plaintiff's injury cannot be determined from common knowledge and experience and instead requires the assistance of experts with specialized medical knowledge"). In light of our holding in Division 1, however, we need not address this claim of error.

For the reasons set forth above, we reverse the judgment of the trial court.

*Judgment reversed. Andrews, P. J., and Miller, J., concur*.