**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2019**

# In the Court of Appeals of Georgia

A18A1185. IRELAND v. WILLIAMS et al.

DILLARD, Chief Judge.

In this interlocutory appeal, Michael Ireland challenges the trial court's denial of his motion for summary judgment in Vera Williams's ("Vera") negligence action against him related to a fatal car accident, in which her husband, Theodore Williams ("Williams"), was killed. Specifically, Ireland argues that (1) there is no evidence to show that he was negligent; (2) Vera's contentions about how the accident occurred are too speculative to create a jury question; (3) there are no genuine issues of material fact as to whether Ireland owed Vera a legal duty; and (4) testimony of an accident reconstructionist did not create any genuine issues of material fact that must be decided by a jury. For the reasons set forth *infra*, we reverse.

Viewing the evidence in the light most favorable to Vera (*i.e.*, the nonmoving party),[1] the record shows that in the early morning hours of May 31, 2013, Ireland left his home in Tifton, Georgia, intending to drive to his job at a brewing company in Albany, Georgia, a trip that typically takes him between 45 minutes to an hour. During his commute, Ireland traveled along a city highway with a posted speed limit of 45 m.p.h. According to Ireland, the traffic was light, it was dark out, and the street was dimly lit. Given these conditions, Ireland drove between 40 to 45 m.p.h. with his headlights on.

At approximately 5:34 a.m., Ireland was traveling in the inside left lane when he checked his rear-view mirror and the road ahead to ensure that he could safely move into the right outside lane and then into the right-turning lane toward his workplace.[2] But just as Ireland shifted lanes, his vehicle vibrated and jerked, and his windshield shattered. While Ireland knew that he hit "something[,]" he did not immediately realize that he had struck a person with his vehicle.

---

[1] *See, e.g.*, *Langley v. MP Spring Lake, LLC*, 345 Ga. App. 739, 739 (813 SE2d 441) (2018).

[2] As noted *infra*, there is conflicting testimony regarding whether Ireland was moving into the right lane or taking a left turn when he hit Williams, but photographs show that the damage to his car was primarily on the far right of the driver's side.

At the time the accident occurred, glass from the windshield shattered and flew into Ireland's face; and in an effort to avoid yet another accident, he continued driving down the highway, where he parked his car on the side of the road. Ireland then exited his car, walked back to the scene of the collision, and saw a man in the road, later identified as Williams. By this time, a passerby had already discovered Williams and called the police. Ireland commented to the passerby that he did not see Williams prior to the collision. And Ireland also reported to the responding officer that he did not see Williams prior to hitting him with his car, the collision was startling, and it was "very dark" in the area where the accident happened. Ultimately, Williams suffered fatal wounds as a result of being struck by Ireland's vehicle.

On July 7, 2014, Vera filed suit against Ireland, both individually and as Administratrix of her late husband's estate, alleging that Ireland was negligent in operating his vehicle by failing to exercise due care to avoid striking and killing Williams. Additionally, Vera contended that Ireland's negligence was the sole and proximate cause of her husband's injuries and death. Ireland answered the complaint, discovery ensued, and on June 3, 2015, Ireland moved for summary judgment. Specifically, he contended, *inter alia*, that negligence cannot be presumed, and Vera failed to present evidence that any act or omission on his part was negligent. Vera

responded, attaching an affidavit from Sean Alexander, an accident reconstructionist with over 17 years of experience, in which he concluded that if Ireland "had maintained a proper lookout in the operation of his vehicle, [he] would easily have been able to avoid striking [Williams]." Alexander further claimed that if Ireland had exercised due care in the operation of his car, Williams would not have been killed.

Ireland moved to exclude Alexander's testimony, but following a hearing on the matter, the motion was denied.[3] Subsequently, the trial court also denied Ireland's motion for summary judgment, concluding that "too many factual issues, which cannot be resolved, exist in this case, and summary judgment is inappropriate." Specifically, the court found that there were genuine issues of material fact as to how the accident occurred, whether Ireland breached a duty owed to Williams, and whether conflicts in the evidence provided by Alexander can be explained or reconciled. The trial court certified its order for immediate review, and we granted Ireland's application for an interlocutory appeal. .

---

[3] While Ireland objected to Alexander's testimony below, he has not challenged the admissibility of that testimony on appeal.

4

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[4] And we review a grant or denial of summary judgment *de novo*, construing "the evidence in the light most favorable to the nonmovant."[5] This may be done by showing the court that "the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [the] plaintiff's case."[6] Moreover, at the summary-judgment stage, we do not "resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[7] Nevertheless, if there is no evidence sufficient to create a genuine issue as to any essential element of the plaintiff's claim, "that claim tumbles like a house of cards[,]" and all other

---

[4] OCGA § 9-11-56 (c); *accord Langley*, 345 Ga. App. at 740.

[5] *Langley*, 345 Ga. App. at 740 (punctuation omitted).

[6] *McQuaig v. Tarrant*, 269 Ga. App. 236, 237 (603 SE2d 751) (2004); *see also* OCGA § 9-11-56 (c).

[7] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

factual disputes are rendered immaterial.[8] With these guiding principles in mind, we will now address Ireland's specific claims.

In several related claims of error, Ireland essentially argues that the trial court erroneously denied his motion for summary judgment because Vera presented insufficient evidence to establish the required elements of a negligence action. We agree.[9]

As we have previously explained, to state a cause of action for negligence in Georgia, a plaintiff must show

---

[8] *McQuaig*, 269 Ga. App. at 237; *accord Dyess v. Brewton*, 284 Ga. 583, 586 (669 SE2d 145) (2008).

[9] Although the burden is on the appellant to show error, Vera's response to Ireland's first claim of error, in which he argued that she failed to identify any specific act of negligence on his part that caused the accident, does not aid us in resolving this appeal. The "argument" section of Vera's appellate brief devotes approximately one page to this claim, and instead of addressing Ireland's legal arguments, merely lists several issues of fact that, in her view, must be decided by a jury. But in doing so, Vera does not provide any record citations, references to legal authority, or explanation as to how such legal authority applies to the facts of this case. *See, e.g.*, *Sirdah v. N. Springs Assocs., LLLP*, 304 Ga. App. 348, 351-52 (2) (696 SE2d 391) (2010) (explaining that parties must support enumerations of error with argument and citations of authority, and mere conclusory statements are not the type of meaningful argument contemplated by this Court's rules). As to the legal arguments raised in other sections of Vera's brief, we address those when necessary.

(1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage to plaintiff's legally protected interest resulting from the breach.[10]

Furthermore, although issues of negligence are generally left to the jury, in cases where "the alleged negligent conduct is susceptible to only one inference, the question becomes a matter of law for the court to determine."[11]

Here, there is no evidence that Ireland was driving in an unsafe manner. Indeed, the undisputed evidence shows that at the time of the collision, Ireland was driving either below or at the speed limit with his headlights on in a dimly lit area. An officer with the Albany Police Department who responded to the scene testified that the area was "really not lighted well at all[,]" and there were *no crosswalks for pedestrians*. He further testified that nothing he observed suggested that Ireland was under the influence of drugs or alcohol on his way to work that morning. Instead, the

---

[10] *Hunsucker v. Bedford*, 304 Ga. App. 200, 201 (1) (695 SE2d 405) (2010) (punctuation omitted); *accord Bradley Ctr., Inc. v. Wessner*, 250 Ga. 199, 200 (1) (296 SE2d 693) (1982).

[11] *Hunsucker*, 304 Ga. App. at 201 (1) (punctuation omitted); *accord Hendrix v. Sexton*, 223 Ga. App. 466, 466 (477 SE2d 881) (1996).

evidence shows that Ireland was familiar with his route to work, and the responding officer testified that he "rarely" saw anyone cross the road at the location of the collision. Further, as to that location, the officer testified that "if you're going to cross [the street][,] you need to do it where there's an intersection . . . closest to the curb as you can, not just in the middle of the street." Ultimately, the officer did not give Ireland a citation or arrest him for vehicular homicide because "he was still in his lane of travel going west before [a person] entered that lane of travel [who] wasn't supposed to be there and was subsequently hit." Indeed the police report listed Williams's "Failure to Yield" to vehicles as a contributing factor in causing the accident.

In any negligence case, the threshold issue is whether, and to what extent, "the defendant owes the plaintiff a duty of care."[12] And whether a duty exists "upon which liability can be based is a question of law."[13] Specifically, the duty can arise either from "a valid legislative enactment, that is, by statute, or be imposed by a common

---

[12] *Diamond v. Dep't of Transp.*, 326 Ga. App. 189, 193-94 (2) (756 SE2d 277) 281 (2014) (punctuation omitted); *accord City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993).

[13] *Diamond*, 326 Ga. App. at 194 (2); *accord Jordan*, 263 Ga. at 27 (1).

8

law principle recognized in the case law."[14] And under Georgia law, although a driver must exercise due care when operating a vehicle to avoid colliding with a pedestrian,[15] OCGA § 40-6-92 (a) provides that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway unless he has already, and under safe conditions, entered the roadway." Indeed, we have held that statutes mandating that a driver yield to a pedestrian under certain circumstances "do not abrogate a pedestrian's duties to exercise ordinary care for her own safety and avoid the consequences of any negligence on the part of others."[16]

But regardless of the existence or extent of Ireland's duty of care in this case, it is undisputed that Williams attempted to cross the highway where there was no

---

[14] *Diamond*, 326 Ga. App. at 194 (2); *accord Rasnick v. Krishna Hosp., Inc.*, 289 Ga. 565, 566-67 (713 SE2d 835) (2011).

[15] *See* OCGA § 40-6-93 ("Notwithstanding other provisions of this chapter, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway . . . ."); OCGA § 40-6-241 (b) ("A driver shall exercise due care in operating a motor vehicle on the highways of this state and shall not engage in any actions which shall distract such driver from the safe operation of such vehicle.").

[16] *Gaffron v. Metro. Atlanta Rapid Transit Auth.*, 229 Ga. App. 426, 428 (1) (494 SE2d 54) (1997).

9

marked crosswalk or intersection, and no evidence showed that Williams had already entered the roadway under safe conditions, which as previously mentioned, might have excused his failure to legally cross the roadway at a crosswalk or intersection under OCGA § 40-6-92 (a). Furthermore, there was no evidence to counter Ireland's testimony that he did not see Williams until it was too late and other testimony that he said the same thing to a passerby and the responding officer immediately after the collision. Under such circumstances, Vera presented no evidence that any *specific* negligent act or omission by Ireland was the proximate cause of Williams's death.[17]

Nevertheless, in an effort to survive summary judgment, Vera contends that Alexander, her expert witness, provided sufficient evidence to create a genuine issue of material fact as to whether Ireland's negligence caused the accident. In this regard, we have explained, "negligence is not to be presumed, but is a matter for affirmative

---

[17] *See Edwards v. Campbell*, 338 Ga. App. 876, 881 (2) (792 SE2d 142) (2016) ("[B]efore any negligence, even if proven, can be actionable, that negligence must be the proximate cause of the injuries sued upon." (footnote and punctuation omitted)); *Elder v. Hayes*, 337 Ga. App. 826, 829 (788 SE2d 915) (2016) ("Although questions of causation are generally for the jury, nevertheless, there must be sufficient evidence to create a jury question on the issue of causation. Proof of proximate cause requires a showing of a legally attributable causal connection between the defendant's conduct and the alleged injury." (citation and punctuation omitted)).

10

proof."[18] Indeed, without some affirmative proof of negligence, we must "presume performance of duty and freedom from negligence."[19] Furthermore, the fact that an accident occurred and a plaintiff suffered injury "establishes no basis for recovery *unless the plaintiff comes forward with evidence showing that the accident was caused by the defendant's negligence*."[20] This is because "guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment."[21] Instead, a plaintiff must introduce evidence which "affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the

---

[18] *Kelly v. Fann*, 343 Ga. App. 351, 353 (807 SE2d 98) (2017) (punctuation omitted); *accord Hunsucker*, 304 Ga. App. at 202 (1).

[19] *Kelly*, 343 Ga. App. at 353 (punctuation omitted); *accord Hunsucker*, 304 Ga. App. at 202 (1).

[20] *Kelly*, 343 Ga. App. at 353 (punctuation omitted) (emphasis supplied); *accord Hunsucker*, 304 Ga. App. at 202 (1).

[21] *Hunsucker*, 304 Ga. App. at 202 (1) (punctuation omitted); *accord Brown v. Amerson*, 220 Ga. App. 318, 320 (469 SE2d 723) (1996).

result."[22] Simply put, "[a] mere possibility of such causation is not enough."[23] Finally, when it comes to expert testimony like Alexander's, our Supreme Court has explained that the appropriate standard is "not whether it is speculative or conjectural to some degree, but whether it is wholly so."[24] But speculation and conjecture by an expert is "still speculation and conjecture, and will not support a verdict."[25]

As noted *supra*, the undisputed evidence in this case shows that, at the time of the accident, Ireland was driving safely in a dimly lit area thousands of feet from the nearest crosswalk in an area where people did not typically cross the road.[26]

---

[22] *Hunsucker*, 304 Ga. App. at 202-03 (1) (punctuation omitted); *accord Redmon v. Daniel*, 335 Ga. App. 159, 164 (1) (779 SE2d 778) (2015).

[23] *Hunsucker*, 304 Ga. App. at 203 (1) (punctuation omitted); *accord accord Redmon*, 335 Ga. App. at 164 (1).

[24] *Layfield v. Dep't of Transp.*, 280 Ga. 848, 850 (1) (632 SE2d 135) (2006); *accord Ga. Dep't of Transp. v. Miller*, 300 Ga. App. 857, 862 (2) (b) (686 SE2d 455) (2009).

[25] *Layfield*, 280 Ga. at 850 (1) (punctuation omitted); *accord Swint v. Mae*, 340 Ga. App. 480, 485 (2) (798 SE2d 23) (2017).

[26] While Ireland testified that, after a new Wal-mart opened, he "maybe noticed" someone cross the road in the relevant area once or twice a week, he nevertheless considered it "a dangerous place to be trying to go across." Similarly, the responding officer testified that people "rarely" cross the road in the area where Williams was hit and that if someone wanted to cross the road there, he or she "need[ed] to do it where there's an intersection."

According to the responding police officer, Ireland remained in his lane of travel while driving, and Williams's failure to yield to his vehicle was a contributing factor to the accident. As to causation, Vera argues that there was evidence establishing Ireland had the opportunity to see Williams and avoid hitting him, and that Ireland's failure to do so was the cause of her husband's death. But her expert, Alexander, did not provide any testimony supporting this contention.

To the contrary, Alexander agreed that there are no pedestrian crosswalks at either intersection east or west of site of the collision, and the closest crosswalk is located *6,000 feet away*. And while Alexander testified that the relevant stretch of highway is "straight and flat" with no visual obstructions, he also noted that Williams was on the side of Ireland's car when he was struck, not directly in Ireland's line of vision down that road.[27] Indeed, after analyzing the damaged vehicle, Alexander opined that Ireland first struck Williams on the driver's side of the car while the vehicle was moving to the left and toward the inside straight lane of traffic. But

---

[27] A picture of the damage to Ireland's car confirms Alexander's testimony in this regard, as it shows damage to the far right side of the car near and around the right front headlight. Based on the location of the damage, Alexander concluded that "[t]he only answer, in this case, that can be found was that [Williams] was on the *driver's side of the vehicle* and that [Ireland's car] *turned* into [him]." (Emphasis supplied).

significantly, Alexander also testified that he could not determine which way Williams was coming from when he was struck due to the "lack of evidence gathering" and because he "[did not] have the data." Alexander estimated that Ireland was traveling between 26 to 32 m.p.h. at the time of the collision, which was more than 10 m.p.h. below the speed limit, and based on road visibility conditions, Williams *should* have been visible to Ireland for at least 200 to 250 feet.[28] Ultimately, Alexander concluded that based on the speed of the car, drag factors, and perception-reaction times, Ireland had the opportunity to come to a stop before striking Williams.

Although Vera now claims that Alexander was able to determine "the position and movement of [ ] Williams in the roadway before his death[,]" this contention misrepresents the record. Indeed, while Alexander believed it was *possible* for Ireland to see 200 to 250 feet in front of him, he was unable to determine if Williams was in the roadway for any length of time prior to the accident or whether he stepped out into the road at the last second before impact. In fact, Alexander found it "*most*

---

[28] As previously noted, Alexander testified that, at the time of the collision, Williams was on the driver's side of Ireland's vehicle, and Ireland "turned into [him]." Thus, Alexander appears to suggest that Williams should have been visible 200 to 250 feet to the side of his car, rather than directly in front of him.

14

*important*[ ]"[29] to convey that he was unable to determine what Williams was doing "two seconds . . . prior to [the] collision." He also explained that his tests show what "should be" visible based on environmental factors, but he could not say what *Ireland* specifically would have seen at the time of the accident. In sum, while Alexander posited that Ireland could have seen Williams and avoided the accident, he testified that he was *not* able to determine which direction Williams was headed before he was struck, how Williams came to be in the roadway, or if he was already in the road in time for Ireland to see him.

Suffice it to say, the foregoing testimony by Alexander is far too speculative to establish that any *specific* negligent act or omission by Ireland was the proximate cause of Williams's death.[30] Indeed, we recently held in a negligence case—in which a driver hit a pedestrian under similar circumstances—that summary judgment was appropriate when the driver was not "violating any rules of the road" at the time of the accident, the pedestrian was hit when crossing the highway "outside of an

---

[29] (Emphasis supplied).

[30] *See, e.g.*, *Baja Props., LLC v. Mattera*, 345 Ga. App. 101, 105 (2) (812 SE2d 358) (2018) (reversing the trial court's denial of a motion for summary judgment as to negligence claims when the plaintiff failed to come forward with any evidence of a specific, negligent act on the part of the relevant defendant that proximately caused his alleged injuries).

available cross-walk[,]" and no evidence showed that the driver saw the pedestrian prior to striking her.[31] In that case, as here, a jury would not be authorized to "infer negligence because an inference cannot be based on evidence which is too uncertain or speculative or which raises merely a conjecture or possibility."[32] We fail to see any meaningful distinction in this case, given that Vera's expert, Alexander, admittedly could not determine how this particular accident occurred, where Williams was located in the final seconds before the collision, whether Ireland saw Williams before striking him, or any specific action Ireland could have taken to avoid doing so. As a result, Vera has failed to present evidence of the required elements of a negligence claim, and the trial court erred in denying Ireland's motion for summary judgment.[33]

---

[31] *Politzer v. Xiaoyan*, 342 Ga. App. 224, 227-28 (2) (801 SE2d 114) (2017).

[32] *Id.* at 227 (2) (punctuation omitted).

[33] *See Kelly*, 343 Ga. App. at 354 (holding that summary judgment should be granted to a driver, who hit a bull, when there was "no evidence of how [the driver's] collision with the bull occurred" and there was "no evidence of anything [the driver] could have done to avoid the collision" (punctuation omitted)); *Politzer*, 342 Ga. App. at 227 (2) (holding that a driver, who hit a pedestrian, was entitled to summary judgment when the evidence showed that the pedestrian, who was dressed in black clothing, crossed a major roadway at night outside of an available cross-walk, and there was no evidence that the driver was speeding, was violating any rules of the road, or saw her before striking her); *Hunsucker*, 304 Ga. App. at 201 (1) (holding that a driver, who injured a pedestrian, was entitled to summary judgment when "the only evidence as to [the defendant's] manner of driving was that he drove within the

2. Because we hold that Ireland is entitled to summary judgment for the reasons set forth in Division 1 *supra*, we need not addresses his remaining arguments.

For all these reasons, the trial court erred in denying Ireland's motion for summary judgment.

*Judgment reversed. Mercier, J., concurs. Doyle, P. J. dissents.*

**\* THIS OPINION IS PHYSICALPRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

---

speed limit on a familiar road at night in mist and, after cresting a hill, could not avoid a black-clothed pedestrian stepping into his lane"); *McQuaig*, 269 Ga. App. at 237-38 (holding that a driver who collided with another car was entitled to summary judgment when, *inter alia*, the plaintiff could not specify how the driver could have avoided the accident); *Johnson v. Ellis*, 179 Ga. App. 343, 344 (346 SE2d 119) (1986) ("[T]he jury could not conclude that defendant, who was looking straight ahead and *did* not see plaintiff before he was on the hood of her car, *should* have seen him in such time as to avoid him."). *Cf. Fountain v. Thompson*, 252 Ga. 256, 257 (312 SE2d 788) (1984) (holding that a driver owed a duty of care to avoid striking a pedestrian, who, unlike the pedestrian in this case, was lying *incapacitated* in the middle of a clear, unobstructed portion of a highway, and there was evidence that the driver could have seen the deceased *well before* hand and certainly in time to stop or evade him if he had been more observant).

17

A18A1185. IRELAND v. WILLIAMS et al.

DOYLE, Presiding Judge.

I respectfully dissent to Division 1. The testimony of the plaintiff's expert, Sean Alexander, creates a genuine issue of material fact as to whether Ireland's negligence proximately caused Theodore Williams's death.[1] Accordingly, I would affirm the trial court's denial of Williams's motion for summary judgment.

---

[1] See *Fountain v. Thompson*, 252 Ga. 256, 257 (312 SE2d 788) (1984); *Mayo v. Old Dominion Freight Line, Inc.*, 302 Ga. App. 19, 21-24 (689 SE2d 837) (2009).