**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**December 6, 2021**

# In the Court of Appeals of Georgia

A21A1299. SPIRES v. THOMAS.

BROWN, Judge.

Jess Freeman Spires sued Raven Damone Thomas seeking to recover for injuries he sustained when he was struck by a vehicle driven by Thomas. The trial court granted summary judgment to Thomas, and this appeal followed. For the reasons set forth below, we reverse.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). This [C]ourt applies a de novo standard of review to an appeal from a grant of summary judgment and we view the evidence in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Kelly v. Fann*, 343 Ga. App. 351 (807 SE2d 98) (2017). So viewed, the evidence shows that at approximately 5:30 a.m. on March 19,

2017, Spires was walking south on State Road 87 on his way to work at the Huddle House in Eastman when he was struck by Thomas' vehicle, which was traveling north on the same road. Spires was thrown through the air and landed in a ditch 20 feet from the edge of the roadway. He broke his nose, his right forearm (compound fracture), his right knee, his pelvis, and his back. The impact tore his urethra off his bladder and caused a possible concussion. Spires never saw Thomas' vehicle and had no recollection of the actual impact; he did not know he had been hit until he woke up in the hospital at least a week or two later.

According to Thomas, she was traveling north on a straight part of State Road 87 when she hit Spires. She had on her high beams; was looking straight ahead; and believes she was traveling 45 to 50 miles per hour. Thomas deposed that she did not

see Spires and thought that she had hit a deer.[1] After the impact, Thomas stopped her vehicle, called her mother, and then called police.

The "Georgia Traffic Crash Report" notes that Spires was "walking southbound, *in the roadway*, in the northbound lane [and that he] came to rest 20 feet east of the east roadway edge"; that "[t]here was no roadway evidence to support the exact area of impact, however there [were] no tire marks/skid marks on the shoulder of the roadway that would indicate [Thomas'] vehicle . . . traveled off the road"; that "[a] bottle of Michelob Ultra beer was lying beside the pedestrian at final rest"; and that "[t]he initial responding deputy, Allen Hammock, described the pedestrian as being intoxicated." (Emphasis supplied.) The report also noted that after the impact, Thomas traveled 567 feet before bringing her vehicle to a stop, and that law

---

[1] In her interrogatory responses, Thomas stated that she did not see Spires until he "unexpectedly stepped into the roadway immediately in front of her oncoming vehicle. . . and she unavoidably collided with him." During her deposition, Thomas explained that she didn't see Spires at all, and was "assuming that's what had to happen." She testified further that Spires "probably darted in front of [her] car" because he was drunk. She also testified that she "didn't see [Spires] at all" until he was loaded into the ambulance. During her deposition, Thomas explained that the police officer told her that Spires was "really drunk" (because he smelled alcohol on Spires and because there was a beer container lying next to him in the ditch), but that she was not sure if Spires had stepped in front of her vehicle because she did not see him at all. She could not recall if she told someone that Spires was standing in the middle of the road, but she assumed that was the case because she "was traveling in a straight line."

3

enforcement suspected alcohol use (but not drug use) by Spires, but that an alcohol "TEST [WAS] NOT GIVEN" to Spires.[2]

According to Spires, he had walked this route "a million times," and was walking on the side of the grass, about a foot-and-a-half from the white "fog line" and off the pavement. As to his location, Spires deposed as follows: "I know I was off the road. I was not pas[t] that white line on the highway. I was not on the pavement. . . . I know I got good enough sense not to walk down the middle of the highway." Spires had no recollection of the actual impact and did not know what happened until he woke up in the hospital. When asked if he ever stepped onto the pavement, Spires deposed, "No, not that I can remember. . . . I mean, I'm pretty smart about staying out of traffic." According to Spires, he has no idea what Thomas was doing "or how [the accident] happened or why it happened[.]" Spires denied that he was intoxicated at the time of the accident or that he was drinking that morning on his way to work, but testified that after being thrown through the air and into a ditch, he supposedly landed on a beer bottle.[3] Spires did not believe he had been drinking the night before, but

_____

[2] There is also no evidence in the record that Spires' treating physicians ordered a toxicology screen.

[3] As to the notation in the accident report that he was intoxicated, Spires testified as follows:

testified that he may have had "a drink or two." Spires swore that he had not consumed any alcohol after midnight on March 19, 2017.

Thomas filed a motion to enforce settlement or in the alternative motion for summary judgment, alleging that the accident occurred when Spires stepped off the shoulder and into the roadway, directly into the path of Thomas' vehicle, and that Spires cannot provide any evidence to show that Thomas negligently operated her vehicle at the time of the accident.[4] Spires responded, attaching the affidavit of accident reconstructionist/investigator Pete Jones, in which he concluded that a person operating a vehicle similar to the one operated by Thomas at the time of the accident, during similar conditions, with its headlights on and traveling at or within the speed limit of 55 miles per hour, would be able to view a pedestrian on the

---

that pisses me off more than me gettin' run over does. . . . I mean, all the cops up there in Eastman know me. I've worked at the Huddle House, right there, with 'em, where every one of them come in on break every night, you know. They see me, up there, doing whatever I had to do. They knew I didn't drink. I don't know why the State Patrol would come say that just because I landed on a, so-called, beer can in the ditch.

[4] Relying on the "Georgia Traffic Crash Report," Thomas' statement of undisputed material facts states that "[a]t the time of the impact, [Spires] was walking southbound along or in the northbound lane of travel for State Route 87."

5

shoulder of the road from 185 feet away and would have sufficient time and distance to avoid hitting the pedestrian, and that even though the roadway has a slow curve, it "generally offers a clear, unobstructed view and field of vision of things in the roadway and off to the side of the roadway." Jones also averred that Thomas had a duty to stop as close to the scene as possible and her failure to do so "may have undermined the scene evidence and investigation" as "investigating officers need to see where vehicles are stopped and often speak to drivers about where certain events occurred, but leaving the scene can affect location of marks on and off the roadway and the collection of other physical evidence."

The trial court granted Thomas' motion for summary judgment, finding that Spires presented no evidence of a specific act of negligence by Thomas that proximately caused his injuries. Specifically, the record contains no evidence that Thomas left her lane of travel and hit Spires off the roadway and no evidence as to Spires' location at the time of impact; "[t]o the contrary, the Crash Report provides there were no tire marks/skid marks on the shoulder of the roadway that would indicate [Thomas'] vehicle traveled off the road." The trial court also noted that Thomas amended her interrogatory response and that there is no contradictory testimony to be construed against her and that the record establishes that Thomas did

6

not see Spires and that Spires did not see Thomas' vehicle or recollect the impact. Finally, relying on *Ireland v. Williams*, 351 Ga. App. 124 (830 SE2d 538) (2019), the trial court concluded that Jones' expert affidavit contains speculation and conjecture which is insufficient to defeat summary judgment. Spires appeals this ruling.

1. As a preliminary matter, we must determine whether the trial court properly rejected the expert's affidavit and whether it properly relied on the crash report.

(a) *Expert's Affidavit*. The trial court erred in rejecting the expert's affidavit. OCGA § 24-7-702 (b) provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) [t]he testimony is based upon sufficient facts or data; (2) [t]he testimony is the product of reliable principles and methods; and (3) [t]he witness has applied the principles and methods reliably to the facts of the case.[5]

See also *Wilson v. Redmond Constr.*, 359 Ga. App. 814, 819 (860 SE2d 118) (2021). It has long been recognized that an expert's opinion based upon inadequate knowledge, conjecture, or speculation "does not mandate the exclusion of the opinion

---

[5] Thomas has not challenged the expert's testimony/affidavit.

but, rather, presents a jury question as to the weight which should be assigned the opinion." *Layfield v. Dept. of Transp.*, 280 Ga. 848, 851 (1) (632 SE2d 135) (2006) (reversing affirmance of trial court's grant of summary judgment to defendant predicated solely upon speculative nature of expert's opinion as to reason for crash). Indeed, "the appropriate standard for assessing the admissibility of [an expert's opinion] is not whether it is speculative or conjectural to some degree, but whether it is wholly so." Id. at 850 (1). See also *Ga. Dept. of Transp. v. Miller*, 300 Ga. App. 857, 862 (2) (b) (686 SE2d 455) (2009); *Eastern Dehydrating Co. v. Brown*, 112 Ga. App. 349, 351-352 (4) (145 SE2d 274) (1965) ("[i]t is not error to allow witnesses to testify to their opinions of the speed of an automobile, whether they be expert or lay witnesses, where they have properly stated the facts upon which their opinions are based") (citation and punctuation omitted). Cf. *Fouts v. Builders Transport*, 222 Ga. App. 568, 575 (1) (474 SE2d 746) (1996) (trial court did not err in permitting an eyewitness to express her opinion as to whether a truck could have stopped if its brakes were working properly, where she testified to the reasons for her opinion, including her observations of the accident and her experience and knowledge of the intersection). Moreover, "[e]xpert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one

8

which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the layman." (Citation and punctuation omitted.) *Fortner v. Town of Register*, 289 Ga. App. 543, 546 (1) (657 SE2d 620) (2008).[6]

(b) *Crash Report*. Under OCGA § 24-8-803 (8) (C), "factual findings resulting from an investigation made pursuant to authority granted by law" are admissible in civil proceedings, "unless the sources of information or other circumstances indicate a lack of trustworthiness." In Professor Paul S. Milich's view, "[t]he kind of agency investigation contemplated by the exception is one with a high degree of competence, fairness, and comprehensiveness. Cursory investigations of a traffic accident by a police officer, for example, do not qualify." Georgia Rules of Evidence, § 19:22, 837-838 (2019-2020 ed.). Before admitting such a report, Milich posits that the trial court must examine certain factors, such as "the competence of the fact finder," "whether the sources upon which the fact finder relied were biased or had an interest in the outcome of the investigation," and "whether the sources used in the investigation

---

[6] As noted previously, the trial court relied on *Ireland*, supra, to conclude that the expert affidavit contains speculation and conjecture; however, that case, as physical precedent only, is not binding on this Court. 351 Ga. App. 124. Moreover, the facts of that case are wholly inapposite as the "undisputed" evidence showed that the decedent in that case attempted to cross the highway where there was no marked crosswalk or intersection. Id. at 128.

9

were basing their input on personal knowledge." Id. at 838. As Milich further explains, "[t]he Advisory Committee Notes to Rule 803 (8) state that 'police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer.'" Id. at 838, n.8. While we question whether the trial court properly relied on the crash report in this case, we need not make that determination; pretermitting the admissibility of the report, as we explain in Division 2, infra, an issue of fact exists, precluding summary judgment in favor of Thomas.

2. Spires contends that the trial court erred in granting Thomas' motion for summary judgment because there is conflicting evidence as to Spires' location at the time of the collision. We agree.

"Questions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases." (Citation, punctuation, and footnote omitted.) *Mayo v. Old Dominion Freight Line*, 302 Ga. App. 19, 21 (689 SE2d 837) (2009). See also *Layfield*, 280 Ga. at 849 (1). In this case, "the evidence is not plain, palpable, and undisputed; rather the very question of where [Spires] was [walking] when the accident occurred is disputed." *Mayo*, 302 Ga. App. at 21.

Pretermitting the contradictory nature of Thomas' testimony,[7] and the narrative contained in the crash report, Spires testified that the last thing he remembers before waking up in the hospital after being struck by Thomas' vehicle was that he was walking on the side of the grass *off the pavement*; he was not walking in the roadway. Given this testimony, there is an issue of fact as to where Spires was walking when he was struck by Thomas' vehicle and, therefore, whether Thomas left her lane of travel and hit Spires off the roadway. Compare *Kelly v. Fann*, 343 Ga. App. 351, 354 (807 SE2d 98) (2017) (affirming grant of summary judgment to driver who hit bull where there was *no evidence* whatsoever about where the bull was or what it was doing immediately before collision; noting that "if the evidence . . . were in conflict about where the bull was and what it was doing at the time of the collision, summary

---

[7] "The *Prophecy* rule requires trial courts, when considering summary judgment motions, to (1) eliminate all portions of a party's self-contradictory testimony that are favorable to, and left unexplained by, that party; and (2) consider the remaining evidence in favor of the party opposing summary judgment." *Thompson v. Ezor*, 272 Ga. 849, 851 (1) (536 SE2d 749) (2000), citing *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (343 SE2d 680) (1986). See also *Pate v. Ga. Southern & Fla. R. Co.*, 196 Ga. App. 211, 213 (2) (395 SE2d 604) (1990) ("[i]n a summary judgment case, where either a movant's or a respondent's explanation for a contradiction in his evidence is determined to be unreasonable (or no explanation is presented at all), the court must *eliminate* the favorable portions of the contradictory testimony *as it then stands*, and construe the evidence as to that issue in favor of the other party") (citation and punctuation omitted; emphasis in original).

judgment would not be appropriate"); *Politzer v. Xiaoyan*, 342 Ga. App. 224, 227-228 (2) (801 SE2d 114) (2017) (affirming grant of summary judgment to driver where evidence showed that pedestrian crossed a major roadway at night outside of an available cross-walk); *Moore v. Camara*, 317 Ga. App. 651, 653 (732 SE2d 319) (2012) (affirming grant of summary judgment to driver where evidence showed that pedestrian was attempting to cross highway when he was struck). Accordingly, we conclude that the trial court erred in granting summary judgment to Thomas.

3. Citing *Fountain v. Thompson*, 252 Ga. 256 (312 SE2d 788) (1984), Spires contends that summary judgment was improper even if he had been walking in the road. While we need not address this contention given our holding in Division 2, we nonetheless conclude that the expert's affidavit creates an issue of fact as to whether Thomas could have seen Spires if he was walking in the road and stopped before striking him with her vehicle. See id. at 257 (where accident occurred in a straight, clear and obstructed section of highway, issue of fact remained as to whether driver should have seen deceased, who was lying drunk in the road, before striking him).

*Judgment reversed. Reese, J., concurs. Doyle, P. J., concurs in judgment only.*